THE HONDURAS COMMERCIAL COMPANY v. STATE BOARD OF ASSESSORS.

1. The federal constitution will not invalidate a state tax upon a corporation merely because the corporation has power to engage in foreign or interstate commerce; the corporation must be actually engaged in such commerce to secure the immunity.

2. A franchise tax, imposed upon a company as the price of the right and privilege of being a corporation, may be exacted by the state granting the franchise, no matter how the corporate property may be invested or employed, or where it may be situate.

3. The yearly license fee or tax levied upon miscellaneous corporations under the act of April 18th, 1884 (*Rev. Sup.*, *p.* 1016), is such a franchise tax, and is constitutional even as against domestic corporations engaged in foreign commerce.

---

On *certiorari.*

The Honduras Commercial Company was organized in October, 1887, under a statute of New Jersey entitled "An act concerning corporations," approved April 7th, 1875. *Rev., p.* 175.

Its certificate of incorporation is as follows:

CERTIFICATE OF INCORPORATION.

*To all to whom these presents shall come, Greeting:*

We, George M. Hall, of Hackensack, New Jersey, William A. Gay, of Newark, New Jersey, and William F. Chittenden, of Brooklyn, New York, citizens of the United States of America, do hereby associate ourselves together to create a corporation under and pursuant to the Act of the Legislature

of the State of New Jersey, approved April 7, 1875, entitled "An Act Concerning Corporations," and the several Acts supplementary thereto and amendatory thereof, and in compliance with said Acts do hereby certify :

*First.* That the name assumed to designate the Company hereby intended to be formed, and to be used in its business and dealings, is the

### HONDURAS COMMERCIAL COMPANY.

*Second.* That the place where the business of such Company is to be conducted in the State of New Jersey is the City of Jersey City, County of Hudson.

That the business of such Company is also to be conducted in the City of New York, State of New York, and within the Republic of Honduras, Central America.

*Third.* That the objects and purposes for which said Company is formed is the acquisition, improvement and sale of lands in the Republic of Honduras; farming in all its branches; raising of fruits and stock of all kinds upon said lands, and the sale of the products and increase from such business, there and in foreign markets; the building and maintaining common roads, railroads, canals, lines of telegraph and telephone, in and upon said lands, and upon such other lands as this Company shall or may acquire in said Republic of Honduras, and to charge for the use of the same; the manufacture and sale of lumber and its transportation to foreign markets; to erect and maintain all fences and buildings necessary to carry on said business of farming, fruit growing and cattle raising, and for the storage and preservation of all farm products and fruits, and for their preparation for sale; and to erect and maintain all such yards, stables, abatoirs and other buildings as shall be necessary in the slaughtering of animals and the preparation and preservation of their meats as food for sale; the exploration, development and working of mines for gold, silver and other metals in and upon said lands, and the reduction and sale of the ores and metals taken therefrom ; to purchase and charter steamships and sailing vessels, and the sailing of the same between said

lands domestic and foreign ports in and about the business and operations to be carried on, on and about said lands by this Company; also to build and maintain wharves, warehouses and hotels upon said lands necessary in carrying on the several branches of business aforesaid; and to carry on a general manufacturing and mercantile business, both wholesale and retail.

That the business incident to the aforesaid several branches of business is to be carried on partly at such agencies within the State of New York, in the City of New York, in which last named City, the Executive Offices of said Company are to be located, and the meetings of the Directors are to be held. That the principal part of the business of said Company within the State of New Jersey is to be transacted at the City of Jersey City, in the County of Hudson aforesaid.

That for the objects and purposes hereinbefore set forth, said company shall have power to hold, purchase and convey real and personal property within this State, beyond this State, and within the State of New York, and the Republic of Honduras, Central America, the same as if such real estate and personal property were all situated in the State of New Jersey, and to exercise such power in the manner provided by law; that the real estate to be purchased, held and conveyed by the Company in the Republic of Honduras, is hereby limited to five million acres of land; and the personal estate is hereby limited to the amount required from time to time by the corporation in carrying on its business.

*Fourth.* The capital stock of said Company is one million of dollars, which capital stock is divided into shares, of the par value of ten dollars each; and that the amount with which said Company shall commence business is one thousand five hundred dollars.

*Fifth.* The names and residences of the stockholders, and the number of shares held by each of them, are as follows:

| Names of Subscribers. | Residences. | No. of Shrs. |
|---|---|---|
| George M. Hall, | Hackensack, N. J. | 25. |
| Wm. A. Gay, | Newark, N. J. | 25. |
| W. F. Chittenden, | Brooklyn, N. Y. | 50. |
| J. A. Gargiulo, | New York City. | 25. |
| Andrew Wesley Kent, | New York City. | 25. |

*Sixth.* The period at which said Company shall commence, is the First day of October, 1887, and the period at which the same shall terminate, is the Twentieth day of September, 1937.

In accordance with "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof," approved April 18th, 1884 (*Rev. Sup., p.* 1016), which, after imposing taxes upon certain classes of corporations to which this company does not belong, enacts "that all other corporations, incorporated under the laws of this state and not hereinbefore provided for, shall pay a yearly license fee or tax of one-tenth of one *per centum* on the amount of the capital stock of such corporations," the treasurer of the Honduras Commercial Company reported to the state board of assessors on May 5th, 1888, that the company had issued one thousand shares of stock for cash paid and seventy-five thousand five hundred shares for the purchase of property necessary for the business, at $10 for each share; and thereupon the state board assessed the license fee or tax for the year 1888 at $765.

The present *certiorari* is sued out to test the legality of said tax.

Argued at November Term, 1891, before Justices DIXON and REED.

For the prosecutor, *Messrs. Randolph, Condict & Black* (with whom was *A. W. Kent,* of New York).

For the defendant, *William Y. Johnson.*

The opinion of the court was delivered by

DIXON, J.   The only ground of objection presented by counsel against this annual license fee or tax is, that it conflicts with the exclusive power of congress to regulate foreign commerce.

The first answer to this objection is, that, so far as the case discloses, the company was not, when the tax was imposed, engaged in commerce.   Its sole business had been, and then was, the purchase, occupation and development of certain lands in the Republic of Honduras, and in this business its whole capital was invested.

Whether between those lands and the United States any commerce should arise, was a matter for future consideration. Until that was decided and acted upon, it could not be said that the company was engaged in such commerce as lies within the purview of the federal constitution empowering congress to regulate commerce with foreign nations.   Even in January, 1890, all that was claimed by the treasurer of the company on its behalf was, that its business would, at some indefinite time thereafter, be "the exportation of the products of its lands in Honduras to the United States and other countries, and the importation of merchandise from the United States and other countries into Honduras."

Evidently, in 1888, the company was not engaged in commerce between the United States and foreign nations.   *Coe v. Errol*, 116 *U. S.* 517.

The second answer to the objection is of more permanent efficacy.

The tax imposed is a franchise tax exacted from the company as the price of the right and privilege, which it received from the state, of being a corporation.   Although the amount to be paid is determined by the amount of the capital stock and the duration of the corporate life, yet these are only the *criteria* chosen by the legislature for ascertaining the probable value of the corporate franchise which the company assumed. The tax is not levied upon the corporate property or business.

*Standard Underground Cable Co.* v. *Attorney General,* 1 *Dick. Ch. Rep.* 270.

Such a tax may be collected by the state granting the corporate franchise, no matter how the property of the company may be invested or employed, or where it may be situate.

This principle formed the basis of decision in *Home Ins. Co.* v. *New York,* 134 *U. S.* 594, where Mr. Justice Field, delivering the opinion of the court, said: "The granting of such right or privilege (of being a corporation) rests entirely in the discretion of the state, and, of course, when granted, may be accompanied with such conditions as its legislature may judge most befitting to its interests and policy. It may require, as a condition of the grant of the franchise, and also of its continued exercise, that the corporation pay a specific sum to the state each year or month, or a specific portion of its gross receipts, or of the profits of its business, or a sum to be ascertained in any convenient mode which it may prescribe. The validity of the tax can in no way be dependent upon the mode which the state may deem fit to adopt, in fixing the amount, for any year, which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows."

In that case the amount of a state tax was to be determined by the amount of capital stock and the annual dividends, and it was resisted on the ground that the capital was largely invested in United States bonds, which could not be taxed by the state; but the tax was sustained on the principle above announced, and the learned justice further said: "The tax in the present case would not be affected if the nature of the property in which the whole capital stock is invested were changed and put into real property or bonds of New York or of other states. From the very nature of the tax, being laid upon a franchise given by the state, and revocable at pleasure, it cannot be affected in any way by the character of the property in which its capital stock is invested. The power of the state over the corporate franchise and the conditions upon

which it shall be exercised, is as ample and plenary in the one case as in the other."

In further support of the proposition that a state may impose upon its domestic corporations a tax levied on the capital stock as a condition of the grant of corporate existence, and notwithstanding the exclusive power of congress to regulate commerce with foreign nations and among the states, may also be cited, *Railroad Company* v. *Maryland*, 21 *Wall.* 456 ; *Philadelphia S. S. Co.* v. *Pennsylvania*, 122 *U. S.* 326, 344.

We are of opinion that the tax is legal and should be affirmed with costs.