JOHN LINN v. THE JOSEPH DIXON CRUCIBLE COMPANY.

1. After a corporation is declared insolvent under the provisions of the Corporation act and an injunction has been issued and a receiver appointed, the corporate existence continues for four months with unimpaired corporate powers except as such powers are impliedly curtailed by the powers conferred upon the receiver; after the lapse of four months the corporation retains power to collect its property and assets and to sell the same and to distribute the proceeds among its creditors and stockholders.

2. Pending the injunction and receiver, such corporation has power to take steps looking towards a reorganization and resumption of its property and business.

3. In exercising such powers such corporation may employ agents and incur a liability to compensate them for their services.

4. Whether the compensation of such agents is a liability which can be charged upon the assets of the insolvent corporation in case it fails to resume its property and business, *quære;* but for such compensation the corporation will be liable if the injunction is dissolved and the receiver removed.

On demurrer to replications.

Argued at February Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiff, *Linn & Speer.*.

For the defendant, *Flavel McGee.*

The opinion of the court was delivered by

MAGIE, J. Plaintiff's declaration has been treated in the pleadings and argument as if it contained a special count for professional services rendered to defendant by plaintiff as an attorney and counselor-at-law and solicitor in chancery, and the common counts.

Defendant pleaded to the supposed special count and to the common counts separately. To each it interposed a similar plea setting out that on January 4th, 1881, the Chancellor had decreed that it was an insolvent corporation and at the same time had appointed a receiver of its property and enjoined it from exercising any of its franchises; that the receiver was duly qualified; that the injunction was afterwards modified so as to permit the corporation to hold an election of directors; that the injunction as modified continued in force until it was dissolved on July 29th, 1890, and that the supposed undertakings declared on were made, if at all, while the injunction remained in force. It was thereupon averred that defendant was then incapable in law to exercise any of

its franchises except that of electing directors, and that the supposed undertakings then made were *ultra vires,* in contempt of the Court of Chancery and void.

To each of these pleas plaintiff has filed two replications and defendant has demurred thereto.

Upon such a demurrer the sufficiency of the former pleadings is brought into question, and in this case plaintiff contends that the pleas, to which these replications were filed, are insufficient to bar his claims set out in the declaration.

An examination of the pleas suggests the idea that the pleader assumed that an order or decree of the Court of Chancery enjoining a corporation from exercising its franchises *ipso facto* deprived it of the capacity to contract. Such a contention is open to serious question. An injunction of that sort might operate upon the corporation and its officers and render them liable to punishment for the exercise of its capacity to contract. But if the corporate existence remain unimpaired, the corporate powers would continue to exist, and it would seem to be no answer to a suit at law upon a corporate contract, to set up that it was made in violation of an injunction against the exercise of corporate powers. If such a contract ought not to be enforced relief would seem to be properly sought, not in denying the contract but by enjoining its enforcement.

But the argument here has not supported the pleas upon the ground above suggested, but has been directed to the proposition that when the Court of Chancery has exercised the powers conferred by the provisions of the Corporation act respecting insolvent corporations (*Rev., p.* 175, §§ 69–86), and has decreed a corporation to be insolvent, appointed a receiver of its property and enjoined the exercise of its franchises, such corporation has become totally incapacitated to make such contracts as those declared on, viz., for the professional services of a lawyer and for work and labor.

This contention requires an examination of these provisions and a determination of their effect upon the *status* of the corporation.

Upon the insolvency of a corporation being made to appear, the Chancellor is thereby authorized to declare it insolvent, and to enjoin it from exercising its franchises and from paying, selling or assigning any of its estate, moneys, lands, &c. He may also appoint a receiver, who is empowered, among other things, to sell and convey all the real estate and personal property of the corporation.

By section 83, as originally adopted in the Corporation act of April 7th, 1875 (*ubi supra*), it was provided that if such an injunction has been allowed and a receiver has also been appointed, and the injunction and appointment have continued for four months, it should not be lawful for the officers of the corporation to use or exercise its franchises, or to transact any business in its name or by color of its charter, except such as might be necessary to collect its property and assets, and to sell the same and to distribute the proceeds among its creditors and stockholders, and that, for all other purposes, the charter of such corporation, by such injunction, appointment and continuance, should be forfeited and void without any further proceedings or judgment.

By these provisions it is plain that the legislative intent was that the corporate powers of such a corporation were to continue unimpaired for the space of four months after injunction and the appointment of a receiver, except so far as their exercise may have been curtailed by the powers conferred on the receiver. This was doubtless for the purpose of enabling those interested to procure the dissolution of the injunction and the removal of the receiver.

After the lapse of four months, the declared purpose was that certain of the corporate powers should, *ipso facto*, be forfeited, but the corporate life was to continue, for corporate powers were to continue for certain purposes, viz., for settling its affairs.

By the supplement to the Corporation act, which was approved March 8th, 1877 (*Rev. Sup., p.* 166), the eighty-third section above considered was amended by striking out its last clause, which provided for the forfeiture of certain corporate

powers after the period of four months, and substituting in its place a provision that, for all other purposes—that is, other than those set forth in the preceding exception—the Chancellor might at any time declare the charter to be forfeited and void.

As thus amended, the plain intent of this legislation is to continue the corporate powers of a corporation declared insolvent unimpaired, except as their exercise may be impliedly curtailed by the powers conferred on the receiver, for the period of four months, and thereafter corporate powers were to continue, but only for the purpose of settling its affairs.

The general rule is that a corporation is not dissolved by becoming insolvent. 2 *Morawetz Corp.*, § 1010. The "Act to prevent frauds by incorporated companies," approved April 15th, 1846 (*Rev. Stat.*, *p.* 129), contained the provisions of most of the sections of the present Corporation act respecting insolvent corporations including the provisions for injunction and receiver. · The appointment of receivers under that act was held not to put an end to the corporation. *Willink* v. *Morris Canal and Banking Co.*, 3 *Gr. Ch.* 377. The provisions now contained in section 83 were first enacted in 1852. *Pamph. L.*, *p.* 397. After the amendment of 1877, it was held in the United States Circuit Court for this district that a corporation declared insolvent and enjoined by the Chancellor and for which a receiver had been appointed, could enter an appearance to an attachment in a state court and remove the proceeding to a federal court. *Second National Bank* v. *New York Silk Manufacturing Co.*, 5 *N. J. L. J.* 197. A like view has been taken elsewhere under similar statutes. *Kincaid* v. *Dwinelle*, 59 *N. Y.* 548; *Pringle* v. *Woolworth*, 90 *Id.* 502; *Coburn* v. *Boston P. M. Manufacturing Co.*, 10 *Gray* 243; *Johnson* v. *Somerville, &c., Co.*, 15 *Id.* 216; *Taylor* v. *Columbian Insurance Co.*, 14 *Allen* 353.

Looking at the whole scope of the provisions of our statutes respecting insolvent corporations, it does not seem open to question that they design to leave the corporate powers, or some of them, in continued existence for the purpose of

settling their affairs and enabling them to resume business. This is particularly indicated by a supplement to the Corporation act approved February 26th, 1878 (*Sup. Rev., p.* 169), giving any such corporation power to mortgage its property and franchises with the consent of the Chancellor when it is reorganizing its property and debts to resume its property and business. Many such corporations have, in fact, reorganized and resumed business.

As, therefore, certain powers remained in the defendant corporation, notwithstanding the proceedings in insolvency, it follows that, because such powers must necessarily be exercised by agents, power to employ and compensate such agents must be implied.

This conclusion is not inconsistent with *Bissell* v. *Besson,* 2 *Dick. Ch. Rep.* 580. In that case Vice Chancellor Van Fleet had declared a mortgage given by an insolvent corporation to those creditors who had initiated the proceedings against it, to be a nullity, both because it was made during the pendency of the insolvency proceedings and because it was in violation of the injunction. The decree was affirmed in the Court of Errors, but the opinion of the majority of the court voting for affirmance is not reported. I think I am correct in saying that the prevailing view was that the mortgage was in contravention of the policy of the statute which designed the equal distribution of the assets of an insolvent corporation among its creditors, whose debts, after injunction issued and receiver appointed, are charged upon those assets. *Graham* v. *Spielmann, &c.,* 5 *Dick. Ch. Rep.* 120; *S. C., Id.* 796. The mortgage in question in that case pledged such assets for the payment of the petitioning creditor in preference to others and was not within such powers as upon our construction an insolvent corporation retains.

Nor need it be determined whether plaintiff could have made effectual his claim for compensation for his services, if defendant had remained insolvent and in the hands of the receiver. Whether such compensation could be paid out of the assets may be questioned. But there can be no doubt that if

the injunction is discharged and the receiver relieved, the corporation and its property will be answerable for such compensation.

Having concluded, then, that an insolvent corporation remains possessed of some corporate powers and may employ agents to exercise such powers, the question is as to the effect of these pleas. The declaration does not fix the date of the rendition of the services of plaintiff. The pleas aver that the services were rendered during the continuance of the injunction and receiver, which was for many years, but do not indicate whether they were rendered during the four months next succeeding the issuing of the injunction and the appointment of the receiver. If within the four months, the pleas, upon the construction given the statute, are no bar to plaintiff's action. But if it is to be inferred, and as is probably the case, that the services were rendered long after the lapse of the four months, the pleas are yet no answer to plaintiff's action. Their purpose is to evince the incapacity of the defendant to make the contracts sued on by appealing to the act which deprives an insolvent corporation of some of its corporate powers. But the act appealed to contains in its very enacting clause and sentence an exception whereby such a corporation retains certain corporate powers which are sufficient to enable it to make such contracts. Under such circumstances the pleas should have averred that the contracts sued on were not within the exception. This is the established rule of pleading when the plaintiff founds his action on a statute. 1 *Chit. Pl.* 206. No reason can be perceived why a like rule should not be applied when a defendant bases his defence upon a statute.

For these reasons, I think, the pleas are defective. This result renders it unnecessary to examine the replications.

Plaintiff is entitled to judgment on the demurrer