Crews *v.* United States Car Co. .

CHARLES T. D. CREWS

| 57 | 357 |
|----|-----|
| s60 | 514 |
| 57 | 357 |
| 62 | 752 |

*v.*

THE UNITED STATES CAR COMPANY.

[Filed January 24th, 1899.]

The assets of. an insolvent corporation in the hands of receivers appointed under the provisions of the Corporation act, constitute a trust fund primarily for creditors existent at the time of adjudication of insolvency and are not liable to the payment of the state franchise tax or imposition assessed after the adjudication of insolvency against the corporate entity, unless the trust fund is more than sufficient to pay the creditors aforesaid, or the franchises be used by the receivers for the benefit of the trust fund or in performance of a duty with reference to the franchise.

On appeal to the chancellor from the rejection of a claim of the State of New Jersey for franchise tax presented to the receivers of an insolvent corporation.

*Mr. Samuel H. Grey,* attorney-general, for the State of New Jersey.

*Mr. Flavel McGee,* with whom was *Mr. Carl A. De Gersdorff* (of New York), for the receivers.

THE CHANCELLOR.

The United States Car Company, a corporation of this state engaged in the manufacture of freight cars in plants erected by it in the States of Illinois, Ohio and Alabama, on the 1st of September, 1897, was adjudged by this court to be insolvent, and two receivers were appointed for it—William C. Lane and Flavel McGee. Subsequently the same gentlemen were appointed ancillary receivers in the State of Ohio, and Mr. Lane alone became ancillary receiver in New York—where the company had an office, and there was some office furniture—and in Alabama and Illinois. During the month of September, 1897, under author-

ity from this court, they operated the several plants. On the 1st of October, 1897, they leased the plants to a new company organized under the laws of this state, in pursuance of a plan of adjustment of the investments in the United States Car Company, which new company was called the Illinois Car Equipment Company, at a stipulated monthly rental pending the conclusion of foreclosure suits upon a mortgage of the several plants.

On the 1st day of February, 1898, the plants were sold to the Illinois Car and Equipment Company at the foreclosure sales, and the leases of them by the receivers then terminated. After the termination of the lease of the realty some personal property was sold by the receivers in New York and Illinois. In July, 1898, the receivers, who had not been made parties to the foreclosure suits, conveyed to the Illinois Car and Equipment Company their right, title and interest in the plants sold to it in the foreclosure suits.

For the purpose of retaining the good will of the customers of the old corporation for the benefit of the reorganized or new corporation, the trade debts of the insolvent corporation were purchased by the reorganization committee at their face value and were assigned to that committee, and the committee now presents its claim for a dividend upon them. In addition to that claim the only creditors of the insolvent corporation are bondholders who claim on account of large deficiencies in the proceeds of the foreclosure sales to satisfy their bonds. The moneys in the hands of the receivers will pay a small dividend on the claims presented.

The reorganized or new company, having acquired, substantially, all the property of the old company and having succeeded to its business, has paid to the State of New Jersey its franchise tax for the year 1898.

Upon the hearing of this appeal the position taken in behalf of the state was that the corporate entity of the insolvent corporation yet exists, subject to the state's imposition of an annual license fee or franchise tax; that such tax has been imposed for the year 1898 and that the same is payable out of the undis-

tributed moneys in the receivers' hands and is entitled to prefer-
ence in payment in virtue of the statute. *Gen. Stat p. 3335
§ 6.* The appellants do not dispute the continuing entity of
the United States Car Company or that such continuing entity,
although stripped of all assets and present power, may be taxed
by the state for its corporate franchises. They acquiesce that
the tax is not a property tax, but is a license fee for the right to
exercise the franchise given to it by the state (*Standard Under-
ground Cable Co.* v. *Attorney-General, 1 Dick. Ch. Rep. 270,
273*); that is, in this case, for "being a corporation." *Honduras
Co.* v. *Board of Assessors, 25 Vr. 278.* Their insistence is that
they are trustees of the assets of the insolvent corporation, now
reduced to cash by them for those who were its creditors at the
time it was adjudged to be insolvent and their assigns, and that
they have not made use of the franchise, and that the tax in
question is indebtedness of the corporation that has arisen sub-
sequent to the adjudication mentioned and is not administrative
indebtedness of the receivers and is not entitled to share in the
distribution of the trust moneys in their hands.

The proposition that the receivers take the assets of the in-
solvent corporation in trust subject to the direction and control
of the court, primarily for the benefit of creditors, cannot now,
I think, be questioned. They are to restore them to the corpo-
ration if the creditors be paid and the court shall so direct, or
are to reduce them to cash and first pay creditors, and if there
be a surplus after paying creditors then to distribute that sur-
plus among stockholders.

In the case of *Mather's Sons Co., 7 Dick. Ch. Rep. 607,* in
speaking of the receivers' relation to the franchise of an insolvent
corporation, I, in substance, said that a receiver does not neces-
sarily deal in every case with the corporate entity or special
privilege or franchise given to the corporation. His duty may
be limited to the mere management and disposition of corporeal
assets. Our Corporation act contemplates two classes of corpo-
rations that may become insolvent and be dealt with by a re-
ceiver—*first,* those of a public character, such as a canal, railroad
or turnpike corporation, the value of whose property and work

is dependent upon the franchise, and in whose continuance the public is interested—I refer to such corporations as are dealt with in the eighty-second section of the Corporation act—and *second*, those mere private enterprises incorporated to secure a franchise merely to enable the prosecution of a lawful private business in a corporate name, and relieve those who are interested in it from individual liability beyond the capital subscribed for, and serve convenience in, from time to time, adjusting the ownership of the capital. In the first class the franchise is to be used by the receiver in the performance of corporate duties and may be sold. In the latter class the franchise is usually a thing without value after the adjudication of insolvency, although cases may arise where the debts of the corporation can be paid and the entity is worth preserving either for convenience or because the name of the corporation has a value through its establishment in trade. But this value is almost wholly for the stockholders, for the receiver cannot sell the franchise of such a corporation. It is only a possible thing for the receiver, as in the case of *Mather's Sons Co.*, to derive some pecuniary value from the use of the corporate name. I expressed the opinion in that case that upon the adjudication of insolvency and appointment of a receiver, the then existing assets were severed from the corporation and appropriated to the payment of the debts of the existing creditors, and were not held to answer the obligations that might thereafter be incurred by the continuing entity from which they were severed unless, after the payment of those creditors, there should remain a surplus for distribution, and that then such surplus should be applied to the satisfaction of all obligations of the corporation before it is free to be returned to the stockholders.

There will be no surplus assets in this case after the payment of creditors. The moneys realized by the receivers will suffice for only a small dividend to creditors and leave a large portion of their claims unsatisfied. The only continuance of the business of this corporation was during the year 1897, for which year the franchise tax has been paid, hence question as to use of the franchise by the receivers is not here presented. After 1897

Crews v. United States Car Co.

the receivers merely conserved assets and converted them into money. Before 1898 it became clear that the entity, named the United States Car Company, would be abandoned by the stockholders. Another company was organized in 1897, under the laws of this state, in behalf of those who had been pecuniarily interested in the United States Car Company, with the purpose to buy the assets and continue the business of the United States Car Company. Prior to the year 1898 that new company hired the use of the plants of the old company pending their inevitable sale under foreclosure and commenced its business. It purchased at the foreclosure sale, and, continuing its business as successor to the United States Car Company, paid its franchise tax to this state for the year 1898.

The question to be determined now, I understand, is whether the receivers must pay the franchise tax of 1898, imposed upon the worthless and abandoned entity, out of the proceeds of sale of the assets held by them for distribution to creditors. The tax was imposed in June, 1898 (*P. L. of 1892 p. 140, Franchise Tax Act § 5*), eight months after the adjudication of insolvency and passage of the assets of the insolvent company to the receivers in trust, as has been indicated. I do not think that it is an indebtedness entitled to share in the receivers' distribution. The creditors who share in the distribution are those who were existent at the adjudication of insolvency.

The Corporation act, in its eighty-sixth section, provides that debts not due, making rebate of interest, when they do not bear interest, may share in distribution and, in its seventy-fifth section, authorizes the court of chancery to limit the time within which creditors shall present their claims to the receivers and prove them. By the seventy-fourth section the receivers are required to make an inventory which shall contain an account of all the debts of the insolvent corporation. By the eighty-third section a lien for labor and services performed is given, limited to services rendered within two months preceding the date at which the proceedings in insolvency shall have been actually instituted. These provisions all contemplate creditors existent at the date of the adjudication of insolvency or prior thereto.

No provision is made for creditors who shall thereafter come into existence. The authority for limitation in the presentation of claims does not contemplate debts to arise in the future. The receiver's inventory cannot contain future debts. The protection of workmen is brought down to the commencement of proceedings in insolvency. I do not find anywhere in the statute any recognition of the right of a debt which comes into existence after the insolvency is adjudged to share in the distribution of the assets taken by the receiver. Nor do I find nor am I referred to any adjudication upon this subject. There is a suggestion of this question by the present chief-justice, in *Linn* v. *Dixon Crucible Co., 30 Vr. 33*, but the question is not discussed.

Prior to the Corporation act (*Rev. of 1896*) our courts differed as to the amount of title a receiver took in the assets of an insolvent corporation. One line of cases, led by *Willink* v. *Morris Canal and Banking Co., 3 Gr. Ch. 377, 400 (1843)*, held that the property of the corporation did not vest in the receiver but that he was substituted in the management of the corporation for the purpose of settling up and closing its affairs, with power, among other things, to take charge of the property and sell it. In this line I find also *New Jersey Southern Railroad Co.* v. *Railroad Commissioners, 12 Vr. 249 (1879)*; *Receiver of State Bank* v. *First National Bank of Plainfield, 7 Stew. Eq. 450, 455 (1881)*; *Kirkpatrick* v. *Corning, 10 Stew. Eq. 54, 59 (1883)*. Another line of authorities held that the title of the corporation was divested by the adjudication and appointment of the receiver. *Corrigan* v. *Trenton Delaware Falls Co., 3 Hal. Ch. 489, 496 (1849)*; *Freeholders of Middlesex County* v. *State Bank, 2 Stew. Eq. 268, 273 (1878)*; *Minchin* v. *Second National Bank, 9 Stew. Eq. 436, 442 (1883)*. See, also, *Harrison* v. *Maxwell, 15 Vr. 319*, for a similar reasoning.

I think that the exact *status* of the title to the property of an insolvent corporation prior to 1896 was stated by the late Chief-Justice Beasley, in the supreme court, in *Wilkinson* v. *Rutherford, 20 Vr. 241 (1887)*. Wilkinson was appointed receiver of the insolvent Newark Savings Institution, under statutes relating to savings banks, and brought suit in his own name as receiver

upon a bond to the savings institution. Question arose as to whether he could do so. The statutes pointed out his duties but were silent as to his title in the assets. The chief-justice said : " I cannot agree to the doctrine that a receiver is a mere custodian of the property of the person whom, in certain respects, he is made to supplant, for it would seem that he is an assignee of the assets within the scope of his office. There seems to be no reason why his power should not be held to be co-extensive with his functions, and it is clear that he cannot conveniently perform those functions unless upon the theory that some interest in the property akin to that of assignee passes to him. The receiver is to discharge the executory duty of collecting the debts and taking into his possession, even against antagonistic claims, the tangible property, and after his appointment a sale of such property by the insolvent would, it is presumed, be absolutely void; and yet if the interest in the property thus transferred was not vested in the receiver it would be difficult to find ground on which to invalidate the transaction. * . * * These embarrassments, as well as many others of a like kind, are obviated by the adoption of the doctrine that, *virtute officii*, a receiver becomes a provisional assignee of the property committed to him." Later, in *Merchants' National Bank* v. *Pennsylvania Steel Co., 28 Vr. 336 (1894)*, the doctrine thus stated was again held by the supreme court.

The present Corporation act (*Rev. of 1896*), by its sixty-eighth section, gives the legal title to the assets of an insolvent company to its receiver. Still, the beneficial ownership is in his *cestuis que trustent*, ascertained by other parts of the statutes and the orders of the court. So far as the question under consideration is concerned, the statute's express gift of the legal title to the receiver does not change the *status* of the *cestuis que trustent*. Before he was expressly given the legal title, as has been seen, he took enough title to enable him to protect the assets for the purposes of his trust.

But the same section of the Revision of 1896 gives him, also, " all the franchises, rights, privileges and effects " of the insolvent corporation and divests the corporation of the title thereto.

Does this casting of the title to the franchises upon him charge all assets in his hands with the duty of maintaining the franchise by paying the franchise taxes imposed after the insolvency? Is the franchise tax in question payable from the assets as an expense of the receiver?

It is apparent that the receiver of an insolvent corporation is trustee for two classes of *cestuis que trustent*-creditors and stockholders. He takes the property of the corporation, charged primarily with the existent debts of the corporation. His first duty is to so manage that property that it will, if possible, yield enough to pay those debts. If there be a surplus, that surplus only is to go to the stockholders. The franchises are given to him to equip him to manage his trust—to use, if necessary, in the disposition of the property or to return to the corporation represented by the stockholders. Holding them, it is perhaps his duty to pay the tax upon them, not, however, as part of the general expense of his trust, out of whatever assets he may have, but from the surplus after the payment of creditors, unless they shall be used for the benefit of the creditors. Where he is to use them and sell them with the property, or where he does use them for the benefit of creditors, it is but equitable that the creditors shall pay for their preservation, but where they are utterly worthless to creditors I fail to see why the assets held in trust for the payment of creditors should be mulcted and perhaps exhausted in their maintenance. In such a case they are held for the stockholders representing the corporation from whose funds, if any there be, the cost of their preservation should come.

In this case the creditors have not had and could not have had any use or value of the corporate franchise, and they should not be compelled to pay the franchise tax in question.

My conclusion is that the claim was properly rejected as one entitled to payment from the funds in the receivers' hands, those funds being insufficient to pay the creditors.