## WILLIAM A. SQUIRE

*v.*

## PRINCETON LIGHTING COMPANY.

[Argued March 22d, 1907. Decided November 18th, 1907.]

1. Under the General Corporation act (*P. L. 1896 p. 298* §§ 65, 68), the title of an insolvent corporation to its property continues until there is either an adjudication of insolvency or the appointment of a receiver or trustee.

2. Upon the filing of a bill of complaint against an insolvent corporation, under section 65 of the General Corporation act (*P. L. 1896 p. 298*), the court of chancery made an order restraining the corporation from paying or transferring its moneys and effects, or contracting any debts, and from selling, assigning or transferring its property, and also requiring it to show cause on a later day why an injunction should not issue and a receiver be appointed. Thereafter, and before the hearing of the order to show cause, a common-law judgment was recovered against the corporation, upon which execution was issued to the sheriff, who made a levy upon personal property of the corporation sufficient to satisfy the judgment. Upon the hearing of the order to show cause, a receiver was appointed, who took possession of the personal property upon which levy had been made and used it for the benefit of the estate of the corporation. —*Held*, that the judgment creditor was entitled to priority in payment.

On appeal from an order of the chancellor advised by Vice-Chancellor Bergen, whose opinion is reported in *64 Atl. Rep. 474*.

*Mr. George Whitefield Betts, Jr.,* for the appellant.

*Mr. Frank S. Katzenbach, Jr.,* for the respondent.

The opinion of the court was delivered by

PITNEY, J.

The Westinghouse Electric and Manufacturing Company recovered a common-law judgment in the Mercer county circuit court against the Princeton Lighting Company on April 12th, 1904, upon which execution was issued to the sheriff. The sheriff, on April 13th, made a levy upon personal property of the defendant sufficient to satisfy the judgment. On April 11th the complainant, Squire, exhibited in the court of chancery a bill of complaint against the lighting company under section 65 of the General Corporation act (*P. L. 1896 p. 298*), praying for an injunction and the appointment of a receiver on the ground of insolvency, and on the same date that court made an order restraining the lighting company from paying or transferring its moneys and effects or contracting any debts and from selling, assigning or transferring its property, and also requiring it to show cause, on April 19th, why an injunction should not issue and a receiver be appointed. On April 19th a receiver was appointed and injunction issued pursuant to the prayer of the bill and in accordance with the statute. The receiver took possession of the personal property upon which the levy had been made, and used it for the benefit of the estate of the corporation.

Subsequently the Westinghouse company presented a claim to the receiver for the amount due upon its judgment, claiming a preference under section 86 of the Corporation act (*P. L. 1896 p. 304*), on the ground that by its judgment and execution it had obtained a lien upon the property of the insolvent company. The receiver refused the preference, and from this action the Westinghouse company appealed to the chancellor. The appeal was heard by Vice-Chancellor Bergen, who dismissed the same on the ground that the appellant was not entitled to a preference. The present appeal brings that adjudication under review.

The question thus raised for our decision is whether the title of the receiver upon his appointment, on April 19th, related back to April 11th, the date of the making of the order to show cause. The learned vice-chancellor held that it did, upon the ground that the court of chancery, on April 11th, held, in effect, that the corporation was insolvent and restrained it from transferring its property, it being his view that under such circumstances it is inequitable to permit creditors to accomplish by indirection that which the corporation is directly restrained from doing, to wit, transferring its property in order to pay its debts. The decision is based upon the supposed equity of the Corporation act, and, as we think, is unsupportable either by its letter or by its spirit.

Section 65 of that act provides that upon the filing of a bill or petition by any creditor or stockholder setting forth the facts and circumstances to show that the corporation has become insolvent, or has suspended its ordinary business for want of funds to carry on the same, the court, on being satisfied by affidavit or otherwise of the sufficiency of the application and of the truth of the allegations, *and upon such notice, if any, as the court by order may direct,* may proceed in a summary way to hear the affidavits, proofs and allegations which may be offered on behalf of the parties, and if, upon such inquiry, it shall appear to the court that the corporation has become insolvent, and is not about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders, it may issue an injunction to restrain the corporation and its officers and agents from exercising any of its privileges or franchises and from collecting or receiving any debts, or paying out, selling, assigning or transferring any of its assets, moneys, &c., except to a receiver appointed by the court.

Section 66 provides that at the time of ordering the injunction, or at any time afterwards, the court may appoint a receiver with full power and authority to take possession of the property of the corporation, and other powers not necessary to be here particularly recited.

Section 68 enacts that

"All the real and personal property of an insolvent corporation, where-soever situated, and all its franchises, rights, privileges and effects, shall, upon the appointment of a receiver, forthwith vest in him, and the corporation shall be divested of the title thereto."

The practice prescribed by section 65 is elastic. It permits the court to summarily determine the question of insolvency upon presentation of the bill and affidavits and without notice to the corporation, and forthwith to take charge of its effects by the appointment of a receiver, if the court deems it proper to pursue that course. But it also permits postponing consideration of the question of insolvency until a later time, and its determination after notice to the corporation concerned.

It seems to us that the learned vice-chancellor erred in treating the present case, as if the court below, upon the filing of the insolvency bill, had proceeded without notice to inquire into the question of insolvency and had thereupon adjudged the corporation insolvent.

The case shows that this was not done; that on April 11th there was no hearing upon the question of insolvency, no adjudication of insolvency, and no general restraint paralyzing all the functions of the corporation. The restraint was limited; it prohibited voluntary acts of the defendant with respect to paying or transferring its moneys and effects, contracting debts, and selling, assigning or transferring its property, but did not in words or by necessary effect restrain third parties from pursuing their lawful remedies *in invitum* the company.

We do not rest our view alone upon the provision of section 68 that the property of the insolvent corporation vests in the receiver upon his appointment. We do not at present dispute that the court of chancery, upon adjudicating that a corporation is insolvent, may forthwith divest it of its corporate functions and place its assets in the course of administration indicated by the statute. A receiver or trustee is the officer intended by the statute and ordinarily appointed by the court to carry out this main object. But it is the adjudication of insolvency that furnishes the occasion for placing the assets of the corporation into the custody of the law.

Section 65 provides that the court, upon determining that the corporation has become insolvent, may issue an injunction restraining it from exercising any of its privileges or franchises, as well as from transferring its estate, &c., and section 66 provides that the court, "at the time of ordering said injunction, *or at any time afterwards,* may appoint a receiver or receivers, or trustees," &c. The act plainly contemplates that the appointment of a receiver may be postponed to a time subsequent to the adjudication of insolvency, with its accompanying enforced paralysis of all the corporate functions. But in the order of April 11th, 1904, there was neither appointment of a receiver nor adjudication of insolvency.

The learned vice-chancellor entertained the view that in order to grant the restraint that was included in the order of April 11th the court must have found that the corporation was insolvent within the meaning of the act. We think the clear intent of the statute is to the contrary, and that such an order to show cause as was here made (which in this aspect merely provided that an application for an adjudication of insolvency might be made upon notice to the corporation) does not determine the question of insolvency, but, on the contrary, determines that the corporation shall be heard before that question is decided.

The question now presented seems not to have been previously passed upon by this court, but the current of authority in the court of chancery seems to agree with the view we have expressed.

In *Minchin* v. *Second National Bank, 36 N. J. Eq. (9 Stew.) 436,* a receiver had been appointed in this state for an insolvent corporation of New York under our Corporation act of April 7th, 1875, which, in section 103 (*Rev. 1877 p. 196*), subjected foreign corporations doing business in this state to all the provisions of the act so far as applicable. Chancellor Runyon, who decided the case, recognized (*36 N. J. Eq. (9 Stew.) 440*) that some of those provisions could not be applied to foreign corporations—for instance, that our court of chancery could not hinder such corporations from exercising their franchises, excepting as it might restrain them from exercising them in this state. He recognized that the question presented was as to the

character and extent of the power over the corporate property for the purpose of administering it for the benefit of creditors or stockholders. He expressed (at *p. 442*) the view that "the mere filing of a bill in such case does not divest the company of its property. The appointment of a receiver under the statute operates as a transfer." And he sustained the right of creditors, notwithstanding bill filed, to proceed at law to secure a lien upon the property and to retain that lien as against a receiver subsequently appointed.

In *Graham Button Co.* v. *Spielmann, 50 N. J. Eq. (5 Dick.)* *120, 124,* Vice-Chancellor Van Fleet said, referring to the provisions of sections 72 and 80 of the Corporation act of 1875 (corresponding in substance to sections 66 and 86 of the act of 1896) : "The effect of these two provisions is, as it seems to me, to fasten the debts of a corporation upon its property *the moment it is adjudged to be insolvent and a receiver is appointed to wind up its affairs.* From that time forth its property is by law appropriated exclusively and irrevocably to the payment of its debts."

Section 68 of the Corporation act of 1896, which provides that upon appointment of a receiver the property of the insolvent corporation forthwith vests in him, is a new section, intended to set at rest the question whether the property of an insolvent company vests at all in the receiver. Upon the law as it formerly stood this question had been in doubt.

In *Willink* v. *Morris Canal and Banking Co., 4 N. J. Eq. (3 Gr. Ch.) 377, 400 (1843),* the chancellor held that under the "Act to prevent frauds by incorporated companies" the property of the company did not vest in the receivers; that they were merely substituted in the place of directors and managers for the purpose of settling up and closing the affairs of the company; that the title to the property was not changed, but a power only delegated to the receivers to take charge of it and sell it.

Six years later another chancellor, apparently in ignorance of the previous decision, held that the statute and the appointment of receivers under it was a conveyance or transfer of all the property of the insolvent corporation to the receivers. *Corrigan*

v. *Trenton Delaware Falls Co.*, 7 *N. J. Eq.* (*3 Halst.*) *489, 496* (*1849*).

In *Freeholders of Middlesex* v. *State Bank*, 29 *N. J. Eq.* (*2 Stew.*) *268, 274* (*1878*), Vice-Chancellor Van Fleet held that the appointment of a receiver under the Corporation act of 1875 invested him with full power to sell, assign and convey all the property of the corporation. *Rev. 1877 p. 189* § *72*. "No act by the corporation," he said, "is necessary to complete either the title of the receiver or that of his purchaser. Unlike proceedings under Bankrupt laws, no assignment by the debtor or commissioners is required. Title is divested by force of law, and such divestiture is perfect and absolute."

The same view was entertained by Chancellor Runyon in *Minchin* v. *Second National Bank*, 36 *N. J. Eq.* (*9 Stew.*) *436, 442*, who cited *Corrigan* v. *Trenton Delaware Falls Co., supra*, and *Freeholders of Middlesex* v. *State Bank, supra*.

But in *Receiver of State Bank* v. *First National Bank*, 34 *N. J. Eq.* (*7 Stew.*) *450, 456*, Vice-Chancellor Van Fleet held that the receiver had a mere right of possession and power to sell; that the law took custody of the property, leaving the title unchanged until sale made. .

And in *Kirkpatrick* v. *Corning*, 37 *N. J. Eq.* (*10 Stew.*) *54, 60*, Chancellor Runyon himself adopted the view last mentioned, at the same time pointing out that while Vice-Chancellor Van Fleet's judgment in *Freeholders* v. *State Bank* was affirmed by the court of errors and appeals in *30 N. J. Eq.* (*3 Stew.*) *311, 339*, the view expressed by the vice-chancellor upon the present topic was unnecessary to his decision, and there was no opinion in the court of last resort. See, also, cases cited in *Crews* v. *United States Car Co.*, 57 *N. J. Eq.* (*12 Dick.*) *357, 362*.

Section 68 of the act of 1896 settles this long-disputed question as to whether the receiver took title or only custody of the property of the insolvent corporation. ·

The present question is, When does the title of the insolvent corporation cease? We answer, Not before there is either an adjudication of insolvency or the appointment of receiver or trustee.

In *Gallagher* v. *Asphalt Company*, 65 *N. J. Eq.* (*20 Dick.*)

*258, 270,* Vice-Chancellor Stevenson said: "I think it is sufficient to say that in New Jersey, apart from the direct effect of statutes, an insolvent corporation has the same dominion over its assets, and its creditors have the same power to reach those assets for the payment of their claims, that we find exhibited in the case of an insolvent natural person. The modifications and limitations of this dominion of the corporation over its property, and this power of the creditors to reach that property preferentially, are derived from our statutes, and not from any theory that immediately upon the insolvency of a corporation anything that can properly be described as a trust is created in respect of the corporate assets. Of course, when, by reason of the insolvency or of the dissolution of a corporation, or from any other cause, the assets of the corporation are placed in the possession of a receiver, or have become vested in him by law, a trust of a high character is at once created. But neither the insolvency or other condition of the company, nor the commencement of a suit to establish a receivership and the trust connected therewith, has the effect to establish such trust."

The only New Jersey case cited to the contrary is *Doane* v. *Millville Mutual Insurance Co., 43 N. J. Eq.* (*16 Stew.*) *522, 535.* Upon the filing of a bill setting up inability of the company to pay its debts, an order was made requiring it to show cause why a receiver should not be appointed, "together with an order restraining the defendant from performing any duties whatsoever devolving upon it." Vice-Chancellor Bird held that a judgment entered upon the same day that this restraining order was made did not entitle the creditor to a preference. He said: "When the court steps in and takes possession, all opportunity for anyone to obtain an advantage by his diligence ceases." This decision was reversed by this court upon grounds that do not either affirm or overthrow this view. *Doane* v. *Millville Mutual Insurance Co., 45 N. J. Eq.* (*18 Stew.*) *274, 282.* With respect to Vice-Chancellor Bird's decision upon the point now raised, it is sufficient to say that if the order that he had under consideration did amount to a taking possession of the assets of the company by the court, his declaration that there was no longer opportunity for anyone to obtain advantage by

diligence is correct. The restraining order that we have under consideration had no such effect.

It follows that the levy made by the sheriff upon the personal property of the Princeton Lighting Company under the execution of the Westinghouse company established a valid lien upon that property, and the subsequent conversion of the property by the receiver entitled the Westinghouse company to priority in payment.

The order under review herein should be reversed, and the cause remitted for further proceedings, in accordance with the views above expressed.

*For affirmance*—REED—1.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL—11.