[No. 2086.   August 7, 1917.]
STATE v. FIRST STATE BANK OF LAS CRUCES.

### SYLLABUS BY THE COURT.

Under the common law the king was entitled to a preference over the subject in the payment of his debts, but this right to a preference continued only so long as title to the money or property remained in the debtor. Upon divestiture of title the right to the preference was lost. Under section 959, Code 1915, upon the appointment of a receiver for an insolvent corporation, title to its property is divested, and the same vests in the receiver. Hence, where a receiver has been appointed for an insolvent state bank, the state is not entitled to a preference over other creditors, as to money on deposit with said bank at the time the receiver was appointed.

Appeal from District Court, Dona Ana County; E. L. Medler, Judge.

State v. 1st St. Bank of Las Cruces, 22 N. M. 661.

Action by the State of New Mexico against the First State Bank of Las Cruces. Judgment for defendant, and plaintiff appeals. Affirmed.

Harry L. Pattron, Attorney General for the State.

The money on deposit in the bank at the time it closed its doors was the property of the State.

College v. Willis, 52 Pac. (Ok.) 922; Estate of Royer 123 Cal. 614- 620-623; Thomas v. University, 71 Ill. 311; Tucker v. Pollock, 21 R. I. 317; Bank v. Knoobs, 16 How. 380; Regents, etc. v. Williams, 9 Gill. & J. 232; Board of Trustees, etc. v. Supervisors, 76 Ill. 187; Dartmouth College v. Woodward, 4 Wheat. 490; Trustees v. Winston, 5 Stew. & Porter, 23; State v. V. & N. R. R. Co., 51 Miss. 368; Regents v. Hart, 7 Minn. 48; Head v. Curators, 47 Mo. 224; State ex rel Atty. Gen. v. Knowles, 16 Fla. 616; Oreg. C. R. R. Co. v. Bailey, 3 Oreg. 175.

The state is entitled to priority over all other creditors in the payment of its debt from the bank.

American Bonding Co. v. Reynolds, 203 Fed: 357-8; Matter of Carnegie Trust Co. 206 N. Y. 397; In re Accident Co., 125 N. Y. S. 85; In re Neiderstein, 138 N. Y. S. 952; Trust Co. v. Railroad Co., 110 N. Y. 250; Fidelity Co. v. Rainey, 120 Tenn. 357; Booth v. State, 63 S. E. 502; State v. Dickson, 38 Ga. 171; County of Glinn v. Terminal Co., 101 Ga. 245, 28 S. E. 604; Seay v. Bank, 66 Ga. 609; Robinson v. Bank, 18 Ga. 65, 96; Green's Estate, 4 Md. Chancery, 349, 356; Smith v. State, 3 Hill, 45, 51; State v. Baltimore, 10 Md. 504, 515-6; Orem v. Wrightson, 51 Md. 34, 42; Parlett v. Dugan, 85 Md. 407-410; State v. Williams, 101 Md. 529-532.

The State did not lose its priority by the appointment of a receiver. Sec. 4 C. 96, L. 1909 (Sec. 462, Code 1915).

Wise v. Wise Co., 153 N. Y. 507; Secs. 1354 and 1355, Code 1915. Contra.; Greenwood v. Commissioners, 1 Desaussure, 450; State v. Harris, 2 Bailey, 598; State v. Cleary, 2 Hill, 600; Baxter v. Baxter, 23 S. C., 114; Banking Commissioner v. Chelsea Bank, 161 Mich, 691, 704.

State v. 1st St. Bank of Las Cruces, 22 N. M. 661.

Reed Holloman of Santa Fe for appellee.

The State has no preference right of payment over other creditors.

3 R. C. L. 644; Brown v. American Bonding Co., 210 Fed. 844; Central Trust Co. v. R. Co., 186 Fed. 291; Zimmerman v. Chelsea Saving Bank, 161 Mich. 691; State v. Harris, 2 Bailey (S. C.) 598; Klink Adm'r. v. Keckley, Ex. 2, Hill Eq. (S. C.) 256; Potter v. F. & D. Co. of Maryland, 101 Miss. 823; Board of Freeholders v. State Bank, 29 N. J. E. 268, affirmed in 30 N. J. E. 311, at page 339.

At common law the preference was not in the nature of a lien but only a prerogative right.

2 Tidd's Practice, 1053, 1054; King v. Lee, 6 Price 369; Giles v. Grover, 23 Eng. C. L. R. 515.

This prerogative right was lost where property was assigned.

3 R. C. L. Sec. 273; Board v. Bank, 29 N. J. E. 268.

### OPINION OF THE COURT.

ROBERTS, J. The First State Bank of Las Cruces, N. M., was a banking corporation organized and doing business under the provisions of section 244 et seq., C. L. 1897. These sections were compiled from an act of the territorial Legislature entitled, "An act entitled 'An act in relation to banks and banking,' approved April 3, 1884." Acts 1884, c. 36. By the act of March 18, 1909, (section 462, Code 1915) provision was made for the method of procedure for the appointment of a receiver for an insolvent state bank. By the section in question the Attorney General was required to institute proceedings in the proper district court for such purpose whenever requested so to do by the Governor of the State.

The Legislature of the territory, by the act of March 15, 1905, (Laws 1905, c. 79), enacted a statute relating to the organization, management, dissolution ,etc., of corporations. The act was substantially a copy of the New Jersey Incorporation Act, approved April 16, 1896 (P. L. p. 277). Our act appears in the Code of 1915 as sections 884 to 1020, in-

clusive. The 131st section of the act (section 1014, Code 1915) provides:

"The provisions of this article shall be held applicable to corporations incorporated under the provisions of the following acts: * * * 3. An act entitled 'An act in relation to banks and banking,' approved April 3, 1884 (section 395 et seq.), and also an act entitled 'An act providing for the organization of saving bank and trust associations,' approved February 17, 1887, and all acts amendatory or supplementary thereto (section 406 et seq.)"

On the 18th day of January, 1915, complaint was filed in the district court of Dona Ana County by the Attorney General against the First State Bank of Las Cruces, in which complaint it was alleged that said bank was insolvent and was in charge of the state bank examiner, and that from a thorough examination of the bank and its actual condition it appeared that it could not resume business or liquidate its indebtedness to the satisfaction of all of its creditors. The complaint further prayer for the appointment of a receiver. On January 26, 1915, an order was signed and entered by the district judge appointing a receiver for said bank. On the 31st day of January, 1916, the Attorney General filed a petition asking that a preference be declared in favor of the State for money deposited in said bank by Morgan O. Llewellyn, as secretary and treasurer of the New Mexico College of Agriculture and Mechanic Arts, in the sum of $76,413.52. The theory advanced in the petition was to the effect that said money was State money, and that in such event, upon the failure of the bank, the State was entitled to a preference over the other creditors of the bank to the extent of the sum deposited. To this petition the receiver filed a demurrer.

On March 15, 1917, the court, by order, denied the petition of the Attorney General for such preference, and final judgment was rendered, to which the Attorney General excepted, and on March 24, 1917, the Attorney General, upon behalf of the State prayed for an appeal to this court which was granted.

In this court the State bases its right to a preference upon the theory that the money in the hands of the sec-

State v. 1st St. Bank of Las Cruces, 22 N. M. 661.

retary-treasurer of the board of regents of the New Mexico College of Agriculture and Mechanic Arts is the money of the State in the hands of the officers of the college, as its agents, and a right to priority is asserted as an attribute of sovereignty. because of the adoption here in 1876 of the common law as recognized in the United States.

That the money in the hands of the secretary-treasurer of the board of regents of the New Mexico College of Agriculture and Mechanic Arts was the property of the state is not debatable. The board of regents and its officers were agents of the State, and acting for and in its behalf.

That many of the American states have held that the common law which gave the king a preference over the subject in the matter of collecting his debts was in force in such states by virtue of a legislative enactment adopting the common law must be conceded. Possibly the weight of authority so holds. The reasoning upholding such contention is well stated by the Court of Appeals of New York in the case of Matter of Carnegie Trust Co., 206 N. Y. 397, 99 N. E. 1099, 46 L. R. A. (N. S.) 260, in which it is said:

"Under our Constitution we have no king. The king therefore, and the prerogatives that were personal to him, being repugnant to our Constitution, are abrogated. But his sovereignty, powers, functions, and duties, in so far as they pertain to civil government, now devolve upon the people of the State, and consequently are not in conflict with any of the provisions of our Constitutions. Inasmuch, therefore, as the claims or moneys due the king for the support and maintenance of the government, whether derived from taxes or other sources of income, were preferred over the claims of others, it follows that under the first subdivision of the provisions of the Constitution of 1777 quoted such preference became a part of the common law of our state, and is so continued under our present Constitution."

Other cases so holding are Fidelity & Guaranty Co. v. Rainey, 120 Tenn. 357, 113 S. W. 397; Booth v. State, 131 Ga. 750, 63 S. E. 502; State v. Bank, 6 Gill & J. (Md.) 205, 26 Am. Dec. 561; Parlett v. Dugan, 85 Md. 407, 37 Atl. 36; Commonwealth v. Baldwin, 1 Watts (Pa.) 54, 26 Am. Dec. 33. The opposite view is well expressed by the Court of Chancery of New Jersey, affirmed by the Court

of Errors and Appeals, without opinion in the case of Free-holders of Middlesex County v. State Bank of New Bruns-wick, 29 N. J. Eq. 268, in the following language:

"If by the adoption of the common law New Jersey became invested with this right, it holds it now in all its original force, and may wield it to-day in all its iron rigor. It has not been changed or mitigated by legislation; indeed, it is unknown in the legislation of the state, and if it exists at all, it is held as perfect and complete as it existed in the hands of George III. Statutes regulating private rights or ameliorating private remedies do not extend to the king (1 Black, Comm. 261), nor to the state (O'Hanlin v. Van Kleeck, 20 N. J. Law, 31, 40; s. c. in error, 21 N. J. Law (1 Zab.) 582, 589). When a statute is general, and thereby any prerogative, right, title, or inter-est is divested or taken from the king, in such case the king shall not be bound, unless the statute is made to extend to him' by express words. Bac. Abr. title Prerogative, E 5. If the right exists here, it is untouched by either constitutional or statutory regulations.

"But my research has failed to discover a single instance in which it has been recognized by the courts of this state, and only one where it as asserted as a state right. In Ely v. Jones, 1 N. J. Law (Coxe) 132, decided in 1792, it was claimed by counsel that the official bond given by a sheriff to the king was in the nature of a recognizance, and bound the obligator's land from the time a breach of the condition oc-curred, and that a subsequent conveyance, either by the obli-gor or his heir, passed the land subject to the lien; but the court did not deem it necessary to pass upon the question, be-ing able to decide the case upon another ground. It cer-tainly has never received judicial approval, and so far as my knowledge extends, no law officer of the state has ever at-tempted to enforce it. For over 100 years as an actual, prac-tical prerogative of government it has neither been exerted nor recognized, and this circumstance, as a matter of con-temporareous and long-continued construction by all the de-partments of the government, would seem to negative the ex-istence of the right with great emphasis. A prerogative which has remained so long, practically useless can hardly be said to exist."

It is not necessary, however, for this court to decide be-tween the conflicting views, for we may assume that the common law in this regard is in full force and effect in this State, and yet the State would not be entitled to its claimed preference, as we shall later show.

Section 76 of the act of March 15, 1905, hereinbefore referred to, being section 959, Code 1915, reads as follows:

"All the real and personal property of an insolvent corporation, wheresoever situated, and all its franchises, rights, privileges and effects shall, upon the appointment of a receiver, forthwith vest in him, and the corporation shall be divested of the title thereto."

By the above language it will be noted that upon the appointment of a receiver all the property of the insolvent corporation vests in such receiver absolutely, and the corporation is divested of all its title thereto. At common law the claim of preference in favor of the king was never conceded to be in the nature of a lien, but only a prerogative right which existed only so long as the status of the property out of which the payment was made remained unchanged.

This rule is laid down in Tidd's Practice, vol. 2, at page 1053, and is as follows:

"And when goods are bona fidely sold, or fairly assigned by the king's debtor to trustees for the benefit of his creditors, before the test of the extent, they cannot be taken under it, even though the debtor in the latter case was a trader within the bankrupt laws, and the assignment was an act of bankruptcy, and void as against the assignees."

This statement by Tidd has been frequently cited and commented on by our courts, and is universally held to be a correct exposition of this feature of the common law. Tidd cites in support thereof the case of The King v. Watson et al., 3 Price, 6. 1 Exchequer Reports, 265. Tidd further says, at page 1054:

"In the case of an execution it is a rule that when the king and his subject stand in equal degree, and the property of the debtor remains unaltered, the king's prerogative must prevail."

In the case of King v. Lee, 6 Price, 369 (2 English Exchequer, 485), the court says, quoting the opinion in full:

"A factor to whom goods have been sent for sale, and who has accepted bills of exchange drawn on him by his principal to the amount of their value, has a lien on such goods and their purchase money, available against the crown where the goods or money have been seized by the sheriff under an extent against the principal for a debt due to the crown."

In the case of Giles v. Grover, 23 Eng. Common Law Rep. 515, at page 520, it is said:

"It is conceded that the crown cannot avoid an equitable mortgage, or the lien of a factor, or a wharfinger, or a bona fide assignment in trust for creditors, or any other similar assignment or charge."

That the sovereign is only entitled to the preference so long as title to the goods remains in the hands of the debtor is fully established by the case of Giles v. Grover, 9 Bing, 127, 131 Eng. Rep. 563. In this case the question arose as to whether the king was entitled to priority in goods of the debtor seized under a fi. fa., but not sold. Under the common law there was issued, on behalf of the king, for the purpose of collecting his debts, a writ called an extent in chief or in aid.

The goods in question were held by the sheriff under the fi. fa., but were not sold; and it was claimed that the king was entitled to a preference under the extent. The House of Lords submitted the question to the judges for an opinion. Each wrote a separate opinion in which all the authorities on the subject apparently were reviewed. The majority of the judges held that the king was entitled to the preference, because while the goods were seized by the sheriff under the fi. fa., title thereto still remains in the debtor until the goods were sold. Two of the judges express a contrary view upon the ground solely that title to the goods passed to the sheriff. All the judges concurred in the view that if title had passed to sheriff, the king would not be entitled to his preference. Thus it will be seen that at common law the king was entitled to the preference or priority only so long as title to the goods or moneys remained in the debtor.

Under the section of the statute above quoted, which concededly applies to banking corporations, upon the appointment of the receiver herein title to the goods and moneys of the defunct bank vested in the receiver, and the bank was divested of all its title thereto. This being true, under the common law, conceding it to be in force in this re-

gard here, the state lost its right to a preference upon the appointment of the receiver.

On behalf of the state it is contended that the above provisions, section 959, supra, ought not to be held applicable to the case of a bank in which the State has its money deposited and for which it has a preference right to be paid. The answer to this is that the Legislature has stated in unmistakable terms that the provision is applicable. We have heretofore quoted the section by which it was specifically provided that the provisions of the statute should be held applicable to banking corporations organized under the act of April 3, 1884.

As we have stated, the corporation act of 1905 was taken almost bodily from New Jersey. In the case of Freeholders of Middlesex County v. State Bank, supra, which arose under a statute which did not specifically vest title to the property in the receiver, the court said:

"That appointment invested him with full power to sell, assign, and convey all the property of the corporation. * * * Title is divested by force of law, and such divestiture is perfect and absolute."

We quote the following from the case of Squire v. Princeton Lighting Co., 72 N. J. Eq. 883, 68 Atl. 176, 15 L. R. A. (N. S.) 657, from an opinion written by Justice Pitney:

"Section 68 of the Corporation Act of 1896, which provides that upon the appointment of a receiver the property of the insolvent corporation forthwith vests in him, is a new section, intended to set at rest the question whether the property of an insolvent company vests at all in the receiver. Upon the law as it formerly stood this question has been in doubt.

"In Willink v. Morris Canal & Banking Co., 4 N. J. Eq. (3 H. W. Green) 377, 400 (1843), the Chancellor held that under the 'act to prevent frauds by incorporated companies' the property of the company did not vest in the receivers; that they were merely substituted in the place of directors and managers for the purpose of settling up and closing the affairs of the company; that the title to the property was not changed, but a power only delegated to the receiver to take charge of it and sell it.

"Six years later another Chancellor, apparently in ignor-

ance of the previous decision, held that the statute and the appointment of receivers under it was a conveyance or transfer of all the property of the insolvent corporation to the receivers. Corrigan v. Trenton Delaware Falls Co., 7. N. J. Eq. (3 Halst.) 489, 496 (1849).

"In Freeholders of Middlesex y. State Bank, 29 N. J. Eq. (2 Stew.) 268, 374 (1878), Vice Chancellor Van Fleet held that the appointment of a receiver under the Corporation Act of 1875 invested him with full power to sell, assign, and convey all the property of the corporation. Rev. 1877, p. 189 § 72. 'No act of the corporation,' he said, 'is necessary to complete either the title of the receiver or that of his purchaser. Unlike proceedings under bankrupt laws, no assignment by the debtor or commissioners is required. Title is divested by force of law, and such divestiture is perfect and absolute.'

"The same view was entertained by Chancellor Runyon in Minchin v. Second National Bank, 36 N. J. Eq. (9 Stew.) 436, 442, who cited Corrigan v. Trenton Delaware Falls Co., supra, and Freeholders of Middlesex v. State Bank, supra.

"But in Receiver of State Bank v. First National Bank, 34 N. J. Eq. (7 Stew.) 450, 456, Vice Chancellor Van Fleet held that the receiver had a mere right of possession and power to sell; that the law took custody of the property, leaving the title unchanged until sale made.

"And in Kirkpatrick y. Corning, 37 N. J. Eq. (10 Stew.) 54, 60, Chancellor Runyon himself adopted the view last mentioned, at the same time pointing out that, while Vice Chancellor Van Fleet's judgment in Freeholders v. State Bank was affirmed by the Court of Errors and Appeals in 30 N. J. Eq. (3 Stew.) 311, 339, the view expressed by the Vice Chancellor upon the present topic was unnecessary to his decision, and there was no opinion in the court of last resort. See, also, cases cited in Crews v. United States Car. Co., 57 N. J. Eq. (12 Dick.) 357, 362 (42 Atl. 272).

"Section 68 of the act of 1896 settles this long-disputed question as to whether the receiver took title or only custody of the property of the insolvent corporation."

The above quotation clearly shows the purpose of the adoption of the provision divesting the corporation of title to its property, and investing the same in the receiver of the corporation. The New Jersey Court of Errors and Appeals having adopted this view of the section, presumably our Legislature intended by adopting the section to adopt it as construed by the highest court of that State. This being true, there can be no question but that the corporation was divested of its title to the property at the time the state sought to secure the preference. The above

being true, it follows that the trial court properly denied the State the claimed preference, and for this reason its judgment will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.