## BLACKROCK COPPER MIN. & MILL. CO. v. TINGEY, Secretary of State.

### No. 1953. Decided November 7, 1908 (98 Pac. 180).

1. CORPORATIONS—"FRANCHISES"—NATURE. The word "franchise" means the right of a corporation to exist as such, which right does not partake of the incidents of property, and it also means the right of an existing corporation to carry on a particular enterprise, which right is property, which may be sold as any other tangible property.

2. CONSTITUTIONAL LAW—CONSTITUTION—CONSTRUCTION. The court, in construing a Constitution, must harmonize conflicting provisions, and give to each its proper effect so far as possible under the rules of construction.

3. CONSTITUTIONAL LAW—CONSTITUTION—CONSTRUCTION. The court in construing a provision of the Constitution, must, in case of doubt, have recourse to the whole Constitution, if necessary, to ascertain the intent of the particular provision.

4. TAXATION—LICENSE FEES—CONSTITUTIONAL PROVISIONS—"FRANCHISES." The word "franchises," in Constitution, article 13, section 2, providing that all property defined to include franchises shall be taxed in proportion to value, when considered in connection with sections 3 and 12, and article 12, section 7, authorizing a franchise tax, and providing that no corporation shall alienate any franchise, etc., does not include the mere right of a corporation to exist as such but means the right granted to an existing corporation to carry on specified business.

5. LICENSES—LICENSE FEES—CONSTITUTIONAL PROVISIONS—FRANCHISES. Laws 1907, p. 126, c. 107 (Comp. Laws 1907, sections 456x6 to 456x10), imposing on each domestic and foreign corporation a progressive annual license tax based on its authorized capital imposes a license tax on the privilege of existing as a corporation, and does not impose a license tax on the franchise to carry on a particular business, and is not in conflict with Constitution, article 13, sections 2, 3, providing that all property, including franchises, shall be taxed in proportion to value, etc.

6. CONSTITUTIONAL LAW—STATUTES—VALIDITY. The rule that a statute must be held constitutional unless it clearly violates a provision of the Constitution applies with special force to a statute imposing a tax, and unless it appears, beyond reasonable doubt, that the power to impose the tax is withheld from the Legislature, the law must be upheld.

7. TAXATION—LICENSE TAXES—CORPORATIONS. Laws 1907, p. 126. c. 107 (Comp. Laws 1907, sections 456x6 to 456x10), imposing on each domestic and foreign corporation a graduated license

34 Utah—24

tax based on its authorized capital, is not void on the ground that it offends against the uniformity clause of the Constitution, and the classification, the amount of the tax, and the manner of collecting it is a matter largely, if not entirely, within the legislative discretion.

8. LICENSES—LICENSE TAXES—CORPORATIONS. Laws 1907, p. 126, c. 107 (Comp. Laws 1907, sections 456x6 to 456x10), imposing an annual license tax on each domestic and foreign corporation, payable on or before November 15th of each year, imposes a tax on every corporation within the class mentioned in the act and which has obtained from the state a franchise to transact business as a corporation at any time before November 15th of each year, and, when the tax is paid by a corporation, it is entitled to the certificate mentioned in section 5 of the act, which entitles it to transact corporate business until November 15th of the following year, and any corporation organized after November 15th in any year is not required to pay the tax until the following November, and the act is not void for uncertainty.

9. LICENSES—LICENSE TAXES—CORPORATIONS. The act is not invalid because it does not deprive a corporation of its privileges in case of its default of payment of the tax, and a corporation subject to the tax cannot complain because the penalty in case of default is not more drastic.

10. LICENSES—LICENSE TAXES—CORPORATIONS. The act is not invalid because the tax and the penalty imposed for its nonpayment are a lien on the tangible property of the corporation; that being a method to enforce payment which the Legislature could adopt.[1]

11. LICENSES—STATUTES—VALIDITY. The fact that a statute imposing an annual license tax on corporations is imperfect, and is not the best that could be devised for raising revenue, does not affect its validity.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by the Blackrock Copper Mining & Milling Company against Charles S. Tingey, Secretary of State. From a judgment of dismissal after sustaining a demurrer to the complaint, plaintiff appeals.

AFFIRMED.

*Lawrence & Robertson* and *Snyder & Snyder* for appellant.

---

[1] Salt Lake City v. Christensen Co., — Utah—, 95 Pac. 523.

*M. A. Breeden, Atty. Gen.,* for respondent.

FRICK, J.

This is an action to recover back certain license taxes paid by the appellant to respondent under protest. The controversy arises with regard to the validity of a certain act passed by the Legislature in 1907 (Laws 1907, p. 126, c. 107), and now incorporated into the Compiled Laws of Utah of 1907 as sections 456x6 to 456x10, inclusive. The title to the act in question reads as follows: "An act requiring all corporations to pay an annual State license; providing for the enforcement of same and prescribing a penalty for refusal or failure to comply therewith and making certain exceptions." The original act is divided into five sections. Section 1 reads as follows:

"All corporations organized under and by virtue of the laws of this state or under the laws of the territory of Utah, and all foreign corporations doing business in this state, except as hereinafter provided, are hereby required to pay an annual state license as follows: All corporations with an authorized capital stock of $10,000 or less, $5; with an authorized capital of more than $10,000 and not to exceed $25,000, $10; with an authorized capital of more than $25,000 and not to exceed $50,000, $15; with an authorized capital of more than $50,000 and not to exceed $75,000, $20; with an authorized capital of more than $75,000 and not to exceed $100,000, $25; and with an authorized capital of more than $100,000 and not to exceed $150,000, $35; and with an authorized capital of more than $150,000, and not to exceed $200,000, $40; and with an authorized capital of over $200,000, $50. Provided, that all corporations of religious or charitable societies, and corporations organized not for pecuniary profit, and canal and irrigation companies organized for the express purpose of providing water for lands owned solely by the incorporators, and all insurance companies, shall be exempt from said license."

Section 2 requires the license tax to be paid to the Secretary of State on or before the 15th day of November of each year. Section 3 is not material here. Section 4 prescribes a penalty for the failure to pay the tax, which subjects the defaulting corporation to the payment of a penalty of $100, and provides that such penalty and taxes shall be a lien upon the property of the corporation, and,

further, that the Attorney General or county attorney may institute an action in the name of the State for the recovery of the license tax and penalty. Section 5 provides that upon payment of the license tax the Secretary of State shall issue to the corporation a certificate evidencing payment of the tax. The Attorney General, who appeared in the court below for respondent, demurred to appellant's complaint, and the court sustained the demurrer, and, appellant electing to stand upon his complaint, the court entered judgment dismissing the action, and hence this appeal.

It is urged by appellant that the court erred in sustaining the demurrer. This contention is based upon the ground that the act in question is unconstitutional, and that therefore the license tax thereby imposed is invalid and nonenforceable, and hence the appellant should have had judgment for the amount paid by it under protest. No question is raised with respect to the sufficiency of the facts alleged in the complaint to entitle appellant to recover if the act in question should be held invalid, nor is there any question presented affecting the respondent's right to collect the tax if the act is held to be valid. The sole question therefore, is the validity of the act in question.

The Constitution of this State (article 13, sec. 2), so far as material here, reads as follows:

"All property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. The word 'property,' as used in this article, is hereby declared to include monies, credits, stocks, franchises, and all matters and things (real, personal and mixed) capable of private ownership."

Section 3 of the same article requires the Legislature to provide by law for a uniform and equal rate of assessment and taxation "so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property." Section 12 of the same article reads as follows:

"Nothing in this Constitution shall be construed to prevent the Legislature from providing a stamp tax or a tax based on income, occupation, license, or franchises."

Appellant strenuously insists that in that part of section 2, supra, quoted from above, franchises are declared to be property, that by section 3 all property is to be taxed under a uniform system of assessment, that the tax in question is a tax upon the corporate franchise of appellant, and therefore is a tax upon property, which can only be taxed in accordance with the value thereof, which value must be ascertained in the same manner as the value of other property is ascertained for the purposes of taxation. The contention therefore is that the act in question is void because it imposes a tax upon property not in proportion to its value, but by simply naming the amount to be paid in gross, regardless of the value of the thing upon which the tax is imposed. The question therefore turns upon the soundness or unsoundness of the foregoing contention.

By a reference to either the text or the title of the act, nothing is discoverable by which the tax in question is in terms stated to be a tax either upon property or upon franchises as such. As an affirmative argument, it is asserted that the mere right to be a corporation is a franchise, that franchises are by the Constitution declared to be property, and, since the tax is imposed only upon corporations, it must be assumed that the tax is necessarily intended as a tax upon corporate franchises considered as property. As a negative argument, it is urged that the tax in question cannot be considered as an occupation or business tax because it applies to corporations only, that merely to exist as a corporation is neither an occupation nor a business within the meaning of occupation or license tax laws, that the tax in question is not imposed as a license to regulate any business or calling, that it is not a license by which any privilege or permission is conferred because it confers no right or privilege upon corporations that they did not enjoy before the act was passed, and that it permits individuals to pursue the business or calling which is carried on by the taxed corporation without the imposition of this license tax.

It is not necessary to enter into any argument with regard to what is ordinarily meant by a license. Nor are we inclined to enlarge upon the numerous definitions given by the courts with regard to the true meaning of a franchise. It must suffice to say that the courts are apparently in hopeless conflict with regard to whether a franchise is or is not property within the purview of the general tax law, and as to whether a franchise may or may not be considered in a dual sense for the purposes of taxation; that is, that in one sense franchises may be considered as property valued and assessed as such, and in another sense as merely conferring a privilege upon the incorporators to transact any lawful business as a corporate body. That a corporate franchise is dual in its character, we think, does not admit of serious doubt. When the law authorizes a given number of individuals to form a corporation, the mere right to exist as such is a franchise and is usually termed a corporate franchise. While the right thus conferred may be a valuable right, it cannot be said to partake of the incidents of property. The right thus conferred is one merely to transact the contemplated business as a corporate body. The same individuals who combine their means in the form of capital stock of a corporation could combine the same means to form a copartnership or voluntary association, and could thus carry on the same or a similar business without obtaining a franchise. In one view therefore a corporate franchise is no more than a mere privilege to conduct any lawful business or enterprise as a body corporate. Whatever value there may be to such a privilege or so-called franchise inures therefore to the incorporators, or to the individual stockholders, rather than to the legal entity called a corporation. To illustrate: In case a number of individuals engage in any business or enterprise as copartners, each individual member thereof becomes liable for the whole partnership debts, and all of his individual property may be subjected to the payment of the firm's obligations, while, as a stockholder or incorporator of a corporation, he hazards only the amount subscribed or

what he has paid in, in case he has paid up his subscription. While the privilege which exempts the individual stockholder's general property from liability cannot exist apart from the corporation itself, and is no doubt to be considered as inhering in the corporate franchise in one sense, it nevertheless is not to be classed as an asset of the corporation, and is not corporate property, although it may be, and no doubt is, of considerable value to the individual incorporators or stockholders who form and constitute the corporation. It is apparent therefore that the privilege to exist as a corporate body and to carry on any business or enterprise as such may be of considerable value to the members composing the corporation, although such a privilege is not property in any except in the broadest sense, for the reason that it is a thing of value. It is manifest that this privilege could not be transferred by the corporation as property, nor could it be levied upon and subjected to the payment of the corporate debts, although clearly pertaining to corporate existence, because the privilege cannot exist without a corporate franchise.

Upon the other hand, there are corporate franchises which clearly are assets of the corporation and constitute a part of its property. The right to operate street railways, to lay water mains through which water is distributed to users in our cities, the right to erect and maintain telephone and telegraph poles and wires in the city streets or on a public road, and by virtue thereof conduct a telephone or telegraph business, or the right to conduct a toll bridge or ferry across streams, and other like privileges called franchises, are each and all not only valuable, but they are assets of the corporation owning them and constitute a large part of its property. It will be observed that the corporators to whom is granted the franchise to conduct a corporate business enjoy all of the privileges of a corporation first instanced, and may also enjoy the franchise or privilege to conduct a certain business to the exclusion of others under one and the same franchise; but, whether an exclusive privilege is granted or not, the franchise to con-

duct any one of the last-mentioned enterprises is still property, and the extent of its value is affected only by the fact that the franchise is exclusive or otherwise. Such a franchise, or any part of it, may be sold or transferred the same as any other tangible property without also transferring the franchise of the corporation to be or to exist as a corporate body, while the franchise we first mentioned cannot be so sold or transferred. The franchise to carry on any one of the particular enterprises above enumerated therefore is property in every sense of that term, and may be valued, assessed, and taxed in proportion to its value in money the same as all other property may be. For the purposes of taxation, in view of the provisions of our Constitution, such franchises must be assessed on their actual value, whatever that may be, and this value must be ascertained in the same manner as is the value of property generally.

But it is contended that, inasmuch as franchises are declared to be property by the Constitution, this includes all corporate franchises and hence no franchise tax may be imposed except by valuation and assessment and by the regular method of valuation and assessment. We cannot agree with this contention. To our minds it is clear that the Legislature did not intend the license tax imposed by the act in question as a property tax notwithstanding that the Constitution provides, in the section quoted from, that franchises are property. Nor did the framers of the Constitution, in our opinion, intend to limit the right of the Legislature to impose any other than a property tax by valuation upon franchises by what is said in section 2, art. 13. If such had been the intention of the framers of that instrument, all that was necessary to say was said in section 2 of that article. Why therefore specially refer to franchises again in section 12 of the same article, and there expressly state that the Legislature may impose a license tax upon franchises, if it was intended that no tax other than a direct valuation tax could be imposed upon corporate franchise? In our view these two provisions are not even conflicting, but, if they were, it would be our duty to har-

monize them and to give each one its proper effect so far as possible under the rules of construction.   In construing a certain provision of the Constitution, we, in case of doubt, not only may, but it is our duty to, have recourse to the whole instrument, if necessary, to ascertain the true intent and meaning of the particular provision in question.  Section 7 of article 12 of the Constitution reads as follows:

"No corporation shall lease or alienate any franchise, so as to relieve the franchise or property held thereunder from the liabilities of the lessor, or grantor, lessee or grantee, contracted or incurred in operation, use or enjoyment of such franchise or any of its privileges."

It is reasonably clear, to us at least, that the framers of the Constitution in this section intended to and did refer only to such franchises as were the subject of lease or bargain and sale, and not to franchises which merely give the right to be or exist as a corporation.   As we have pointed out, the latter right cannot be leased or alienated, or sold as a thing separate from the corporation, while the franchises mentioned in the section last above quoted may be.   While the foregoing section may, in itself, shed but a faint light upon the actual meaning intended to be placed upon the word "franchises" as used in section 2 of article 13, supra, yet, when it is read in connection with section 12 of the same article to which we have referred, and which certainly does not prevent the Legislature from imposing a license tax upon corporate franchises, then there is little if any room left for doubt that the framers of the Constitution treated, and intended to treat, corporate franchises as partaking of a dual character, the one as property subject to alienation and transfer, and the other as a mere right to be or exist as a corporation.   That part of a franchise which may be alienated and transferred by the corporation while still continuing its existence as such clearly falls within section 2 of article 13, supra, and must be assessed and taxed as other property, while, upon the mere right to be or exist as a corporation, a license tax may be imposed.   No doubt,

the framers of the Constitution had in mind the fact that a franchise which relates merely to the right or privilege to be or exist as a corporation, although a matter of value to the incorporators or stockholders, is not an asset of the corporation and transferable as such, and that its value cannot, under ordinary rules, be ascertained for the purposes of assessment and taxation; but, since it is a privilege or right which is granted by the State, a license tax may be imposed upon this right or privilege for the purposes of raising revenue, and the method by which such a tax shall be imposed and the extent thereof is left to the sound discretion of the Legislature, in whom, in the absence of constitutional restrictions, the whole power of taxation is vested. It is further apparent that the license tax imposed by the act in question can be said to be a franchise tax in a very limited sense merely. It is far more in the nature of a license tax imposed upon the privilege of being and continuing to exist as a corporation. It must be conceded, however, that nearly all, if not all, the authorities apply the term "franchise" to the privilege of becoming and existing as a corporation. The cases are, however, so numerous, and, in view of the varied facts and circumstances upon which the decisions are based, are so conflicting, that they shed but little, if any, light upon the real question to be solved in this case in view of the provisions of our Constitution. There are a large number of cases, however, in which it is held that franchises for the purposes of taxation, and perhaps for some other purposes partake of a dual character. We shall refer to a few only of the many cases that might be cited.

In the case of *Cedar Rapids Water Co. v. Cedar Rapids,* 118 Iowa, at page 238, 91 N. W., at page 1083, it is said:

"The term 'franchise' is defined in various ways, and its meaning depends more or less upon the connection in which the word is used. Without going into any extended research as to its origin, it may be said that a franchise is a special privilege conferred by governmental authority upon individuals, and which does not belong to individuals generally as a matter of common right. It

is also to be regarded as a generic term covering all rights granted to a corporation by legislative act or statute. A corporation (by which is meant an association of individuals into a body lawfully exercising corporate powers) is itself a franchise, and the different powers which may be exercised by the corporation are also franchises. In the first illustration above used, the franchise is the privilege by the individual members to be a corporation and exercise corporate powers; and, in the second, the franchise is the privilege which is granted to the corporation, when organized, to perform certain acts or to carry on certain business."

The same thought is expressed in different words in the case of *Pierce v. Emery,* 32 N. H. 484, in which case Mr. Chief Justice Perley, at page 507, uses the following language:

"The word 'franchise,' so often used in the act and in the deed, has various significations, both in a legal and popular sense. A corporation is itself a franchise belonging to the members of the corporation; and a corporation, being itself a franchise, may hold other franchises, as rights and franchises of the corporation. A municipal corporation, for instance, may have the franchise of a market, or of a local court; and the different powers of a private corporation, like the right to hold and dispose of property, are its franchises. . . . A corporation, being itself a franchise, consists and is made up of its rights and franchises."

In the case of *Marsden Company v. Assessors,* 61 N. J. Law, 461, 39 Atl. 638, the question as to whether a certain license tax imposed upon certain corporations was a tax upon corporate property was involved. The corporation asserted that it was, and the assessors contended to the contrary. At page 462 of 61 N. J. Law, and at page 639 of 39 Atl., Mr. Justice Collins, in speaking for the court, adopts and approves the language used by the same court in another similar case reported in *Standard Under-Ground Cable Co. v. Attorney-General,* 46 N. J. Eq., 270, 19 Atl. 733. The language referred to is as follows:

"The fault of this position is the assumption that this tax is one upon property. Such, manifestly, is not the case. The law in question imposes a tax on certain corporations by way of a license for exercising corporate franchises. It is declared to be such a tax by the act, and, although it is laid on this class of corporations with respect to the capital stock, the tax possesses the legal quality of a license or franchise tax."

The same doctrine is laid down in *Honduras Company v. Assessors,* 54 N. J. Law, 278, 23 Atl. 668, and also in the following cases: *People v. Knight,* 174 N. Y. 475, 67 N. E. 65, 63 L. R. A. 87; *Home Ins. Co. v. New York,* 134 U. S. 595, 10 Sup. Ct. 593, 33 L. Ed. 1025; *Tremont & Suffolk Mills v. Lowell,* 178 Mass. 469, 59 N. E. 1007.

We do not deem it necessary to refer to the other cases that in some form or other invoke the same doctrine. The contention that the case at bar is distinguishable from the cases cited above, upon the ground that the Constitution of this State declares franchises to be property, is not tenable, in view that that instrument in terms recognizes the fact that franchises may and do partake of a dual character, as we have pointed out. We have therefore cited the foregoing cases only for the purpose of showing that the framers of our Constitution, in attributing to corporate franchises a dual character, were clearly in harmony with the law as it is declared to be by the courts. The act, in our opinion, is valid, and we again repeat, what this court has so often declared, that, when an act or statute is attacked upon the ground that it violates some provision of the Constitution or in some way is repugnant to that instrument, it must clearly appear to be so, or the act or statute must be held valid. This doctrine applies with especial force to a law which sets in motion a sovereign power such as the power of taxation when it is alleged that the Constitution prohibits the exercise of the power. In such a case, unless it is made to appear beyond a reasonable doubt that the sovereign power to impose taxes in a particular way is withheld from the Legislature, the law imposing a particular tax must be upheld.

The case of *Western Union Telegraph Co. v. City of Omaha,* 73 Neb. 527, 103 N. W. 84, relied upon by appellant, does not in any way impugn the doctrine we are seeking to enforce here. The decision in that case is based upon the theory that the Legislature could not, within the provisions of the Constitution of Nebraska, arbitrarily determine the value of franchises and tax them at the rate

that other property is taxed; but it is held that, if franchises are taxed as tangible property, then the value thereof must be ascertained by the same methods that the value of other property is ascertained for the purposes of taxation. It is, however, conceded in that case that the Legislature may do what is attempted to be done in the act in question, namely, impose a tax upon the right to exercise the privilege conferred by the corporate franchise.   The other cases cited by counsel for appellant upon this point in effect do no more than support the doctrine of the Nebraska case referred to.

The contention that the act is void, upon the ground that it offends against the uniformity clause of the Constitution, cannot be sustained.   Having determined that the tax is not a tax upon property within the purview of the Constitution of this State, it follows that the classification, the amount of the tax, and the manner of collecting it is a matter largely if not entirely within the legislative discretion.   With regard to this point the same principle is involved in this case that was involved in the case of *Salt Lake City v. Christensen Company,* 95 Pac. 523, ante 38, recently decided by this court, and it is therefore needless to extend the discussion upon this point.   In addition to the authorities cited in that case, we refer to the following: *Denver City Ry. Co. v. City of Denver,* 21 Colo. 350, 41 Pac. 826, 29 L. R. A. 608, 52 Am. St. Rep. 239; *Home Ins. Co. v. New York,* 134 U. S. 600, 10 Sup. Ct. 593, 33 L. Ed. 1025; 1 Cooley on Taxation (3d Ed.), p. 412.

It is further contended that the act is void for uncertainty, in that it fixes no time at which the duty to pay the tax arises, and because the nonpayment thereof does not prevent the corporation from continuing its business, although it may refuse or neglect to pay the tax.   As to the first point, it is sufficient to say that the license tax imposed is an annual tax payable "on or before the 15th day of November of each year."   Any corporation falling within the class mentioned in the act upon whom the tax is imposed, and which has obtained from the State a franchise

to transact business as a corporation at any time before the 15th day of November of any year, is liable for the tax, and, when paid, is entitled to the certificate mentioned in section 5 of the act, which entitles such corporation to continue to transact its corporate business for the whole year and until the 15th day of November of the following year. Any corporation organized after the 15th day of November in any year clearly cannot be required to pay the tax until the following November. If it be said that this authorizes a newly created corporation to transact business for a period for which it pays no tax, it may likewise be said that the same condition exists with regard to any annual tax. Even upon a property tax when a person becomes the owner thereof after the time for assessing the property has passed, he may hold it immune against taxation until the next annual period for assessment arrives. The Legislature no doubt could have provided that any corporation formed after the 15th day of November in any year should be required to pay a tax in proportion to the time intervening between its organization and the end of the yearly term, namely, the 15th day of November. The mere fact that this was not done, however, in no way affects either the certainty or the uniformity. It is made to operate upon all corporations in the same way where their status is the same. Nor do we see anything objectionable in the fact that the act does not deprive the corporation of its privileges in case of default of payment of the tax. This is a mere matter of detail in enforcing the tax. If the tax is valid, and we think it is, then the corporations upon whom it is imposed certainly cannot be heard to complain that the penalty in case of default is not more drastic than it is. Nor is there any merit in the contention that both the tax and penalty constitute a lien upon the tangible property of the corporation. This is the method that the Legislature has adopted to enforce payment of the tax, and, as we have pointed out in *Salt Lake City v. Christensen Company,* supra, is a matter entirely within the legislative discretion. The law no doubt is somewhat crude and imperfect and may not be

the best that could be devised for the purposes of raising revenue, but neither one nor all of these reasons can in any way nor to any extent affect the validity of the law itself.

From what has been said, we hold: (1) That the act in question is not clearly repugnant to any constitutional provision; (2) that the tax in question is a mere license tax imposed by the State upon certain corporations for the privilege granted them by it to be and to continue to transact business in this' State as a corporation, and the tax was not intended to be, nor is it, a tax upon franchises as tangible property, and therefore does not offend against the provisions of section 2 of article 13 of the Constitution; (3) that the manner in which the tax is imposed and the amount that each corporation is required to pay, as ascertained and fixed by the act, is not contrary to any constitutional provision; (4) that the period of time for which the payment of the tax entitles the corporation to continue its business without further payment is certain; and (5) that the act is not so uncertain nor unfair in any of its provisions that a court would, for that reason, be authorized to declare it invalid.

The judgment therefore ought to be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.