INTERNATIONAL   SMELTING   CO.   v.   TOOELE
COUNTY.

No. 3332.   Decided July 2, 1919.   (182 Pac. 841.)

TAXATION—CONSTITUTIONAL PROVISIONS—PROPERTY TAXABLE—RIGHT OF EMINENT DOMAIN. The naked right of eminent domain possessed by a smelter company and used in connection with its right to operate its smelter, being such a right as cannot be transferred, sold, or mortgaged as other property, and which can only be enjoyed after complying with the requirements of Comp. Laws 1917, section 7330, subd. 13, giving it such

International Smelting Co. v. Tooele County, 54 Utah 591.

right, is not such a franchise as is subject to taxation within Const. art. 13, section 2.[1]

Appeal from District Court, Third District, Tooele County; *Wm. H. Bramel*, Judge.

Action by the International Smelting Company against Tooele County to recover taxes paid under protest. From judgment for plaintiff, defendant appeals.

AFFIRMED.

*James T. Hammond* and *F. C. Loofbourow*, both of Salt Lake City, for appellant.

*Van Cott, Riter & Farnsworth* of Salt Lake City, for respondent.

GIDEON, J.

This action was brought to recover taxes paid under protest. The case was submitted upon an agreed statement of facts. The court adopted the facts thus stipulated and made conclusions of law in favor of the plaintiff. Judgment was entered allowing plaintiff the amount claimed. From that judgment the defendant, Tooele county, appeals.

From the stipulated facts, the admitted allegations of the complaint, and the affirmative allegations of the answer, which are not denied, it appears that the plaintiff is a corporation organized under the laws of Montana, and owns and operates, and did own and operate during the year 1917, a smelter in Tooele county, this state; that the plaintiff had complied with all the requirements of the laws of this state necessary to authorize a foreign corporation to do business within the state; that, as required, the board of directors had

---

[1] *Black Rock Mining Co.* v. *Tingey*, 34 Utah, 369, 98 Pac. 180, 28 L. R. A. (N. S.) 255, 131 Am. St. Rep. 850.

adopted a resolution accepting the provisions of the Constitution of Utah, designating a resident agent upon whom process could be served and naming Salt Lake City, Salt Lake county, as the principal place of business in this state; that on or about May 1, 1917, the assessor of Tooele county assessed for general tax purposes for that year "improvements, machinery, stock on hand, and office equipment" of the plaintiff; that during the said month of May the same officer made the further assessment for taxation against the plaintiff in these words, "Franchise $50,000.00;" that the assessment roll of defendant county contained a notation or statement that the same was made at the request of the county assessor to cover intangible assets. It also appears that the assessment of said franchise was in due time protested by plaintiff to the county board of equalization of said Tooele county as being irregular and unauthorized by law; that said protest was overruled and denied, and the tax upon said alleged franchise was thereupon fixed at the sum of $750; that in September, 1917, payment of said tax was demanded by the county treasurer of Tooele county, and said treasurer threatened, unless paid, to sell the property of plaintiff; that on the 30th day of November, 1917, and pursuant to such demand and threat, the plaintiff paid the tax under protest, and such fact was noted by the county treasurer upon his record. It further likewise appears that Tooele county has less than 20,000 population; that the smelter owned and operated by the plaintiff is not situated within one mile of any incorporated city or town; that the plaintiff had acquired the right to operate, by, purchase, or option to purchase, or easement, at least seventy-five per cent. of the value of land acreage owned by persons or corporations situated within a radius of four miles of its said smelter, including the right for the discharge and natural distribution of smoke, fumes and dust produced by the operation of such works; that the plaintiff by this means acquired the right of eminent domain, but had never exercised such right.

It is the contention of appellant that the right of eminent domain granted to the respondent under the section of the

statute hereinafter referred to is such a franchise as is taxable under the Constitution and laws of this state; that for the purposes of taxation the situs of such franchise is in Tooele county. On the part of respondent it is contended that the mere right or power of eminent domain, to be used in connection with its right to operate its smelter, is not such a franchise as is subject to taxation, and that if it is subject to taxation it can only be taxed at the principal place of business of the plaintiff company, which is not in Tooele county, but in Salt Lake county. A determination of the questions thus presented will require an examination of the Constitution and statutes of this state, and also the former decisions of this court.

The section of our Constitution respecting what property shall be subject to taxation (section 2, article 13) reads:

"All property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. The word 'property,' as used in this article, is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership; but this shall not be so construed as to authorize the taxation of the stocks of any company or corporation, when the property of such company or corporation represented by such stocks, has been taxed. * * *

Other provisions of that section direct that the Legislature shall provide for an equal and uniform rate of assessment so that all property shall bear its fair proportion of the taxes, based on its valuation. Statutes have been enacted to carry into effect the above provision of the Constitution.

Comp. Laws Utah 1917, section 7330, enumerates the public uses for which the right of eminent domain may be exercised. Subdivision 13 of that section, so far as material here, is as follows:

"For sites for mills, smelters, or other works for the reduction of ores and necessary to the successful operation thereof, including the right to take lands for the discharge and natural distribution of smoke, fumes, and dust therefrom, produced by the operation of such works; provided, that the powers granted by this subdivision shall not be exercised in any county where the

population exceeds twenty thousand, or within one mile of the limits of any incorporated city or town; nor unless the proposed condemnor has the right to operate by purchase, option to purchase, or easement, as to at least seventy-five per cent. of the value of land acreage owned by persons or corporations situated within a radius of four miles from the mill, smelter, or other works for the reduction of ores.  *   *   * "

The courts of numerous states have held that the right to be that is, to hold a charter from the state to exist as a corporation and to conduct any business of whatever nature, is a franchise, and as such is property subject to the general tax law.  37 Cyc. 815.  That, however, is not an open question in this jurisdiction.  This court, in *Black Rock Min. Co.* v. *Tingey,* 34 Utah, 369, 98 Pac. 180, 28 L. R. A. (N. S.) 255, 131 Am. St. Rep. 850, enunciated a contrary ruling and held that the franchise to exist as a corporation is not subject to taxation, and is not such a franchise as was contemplated by the framers of the Constitution enumerating what property should be subject to taxation under section 2, article 13, supra.  The reasoning of the court in that case, if not decisive of the question here presented, is at least strongly argumentative in favor of the contention of respondent.  Bear in mind in this case that the county, appellant, is contending only that the right of eminent domain possessed by the plaintiff company, though never exercised, is such a valuable right or franchise that it is justly the subject of taxation.  It will therefore be of interest to examine in what way this right partakes of the nature of property as generally understood by lawmakers and the courts.

The right of corporations such as the plaintiff to take property by condemnation cannot be transferred or sold as other property.  It exists only by virtue of the nature of the particular business engaged in by such corporation.  It cannot be mortgaged or sold under execution.  It is a right that can only be enjoyed by a person or corporation after having complied with the requirements of subdivision 13, section 7330, supra.  It cannot exist and does not exist independently of the particular person or corporation, and only by the corporation so long as it is conducting the business specified in

the statutes and has otherwise complied with the requirements which authorize and empower it to exercise such right. It is not susceptible of the ordinary attributes of property. The learned trial judge, in his written opinion bearing on this particular phase of the question under consideration, has clearly and concisely stated the law applicable in the following paragraphs:

"In this particular caes, it appears to me that the power of eminent domain possessed by plaintiff is not, as a matter of law or logic, susceptible of any monetary valuation. It is a mere incident of corporate power to be used for the protection and advancement of the business being conducted. Whatever property plaintiff acquires by means of this power it purchases for full value, and such property thereupon becomes a part of its visible, taxable estate, and is in no sense profits or earnings. In sum and substance, this power is nothing more or less than a power to buy, for the purposes of a certain use, such property as it needs.

"If a case in which a corporation was making profit by the continuous and systematic exercise of its power of eminent domain (if such a case were possible) were presented to this court, the court would be inclined to give great consideration to certain arguments advanced by defendant. But such a case is not presented here, and is not likely to arise.

"I have gone over the cases cited by defendant, and other cases of that class and of other classes. In each case where the franchise was taxed, it appears that the power, privilege, monopoly or franchise in question conferred upon its predecessor a field and mode of activity that resulted in direct profit from the exercise of such power, privilege or monopoly. All railroads, utility companies, water companies, etc., fall within this class. This idea is exemplified and well developed in the cases. *Adams Express Co.* v. *Ohio*, 166 U. S. 185 [17 Sup. Ct. 604, 41 L. Ed. 965]; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150 [17 Sup. Ct. 532, 41 L. Ed. 953]."

As pointed out by the district court in the above quotation, whatever property is acquired by plaintiff in the exercise of the right of eminent domain is capable of identification. Such property is evidenced by contract of purchase, gift, or court decree, and does not belong to or have any of the attributes of that long list of valuable intangible assets referred to by Justice Brewer in the *Express Company Cases*, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965. What-

ever difficulty may exist in establishing a correct basis of valuation, for taxation on the easement or privilege acquired by purchase or condemnation for the right to discharge smoke, fumes, etc., upon the land so condemned, the difficulty is no greater, and in the very nature of the case it ought to be easier of determination, than fixing a value upon the mere abstract power to exercise the right of condemnation.

In addition, it may not generally be. permissible, in an effort to arrive at the meaning of constitutional provisions, to consult or consider the history of the community where such Constitution exists, or inquire into the prior state of the law; nevertheless, when doubt exists as to the intent of the makers of the Constitution or meaning of the words employed, and when that meaning cannot be definitely determined from the other provisions of the Constitution, courts have called and do frequently call to their assistance in the interpretation of constitutional provisions the history, traditions, and needs of the people adopting such Constitution, the prior state of the law, and its state at the date of the adoption, in an attempt to determine what was or was not intended by the framers of such Constitution. Black on Interpretation of Laws, page 28.

Irrigation companies, associations, or other organizations having for their object the development, storing, and distribution of water to the inhabitants of the territory of Utah were encouraged by legislative enactment from the earliest settlement of this state. Such irrigation companies or associations have not only been granted state and municipal assistance, but were at the date of the adoption of the Constitution, when organized for certain purposes mentioned, under the law then existing, exempt from taxation. At the time of and prior to the date of the adoption of the Constitution the right of eminent domain was given to individuals or corporations desiring to construct "reservoirs, canals, ditches, flumes, aqueducts, and pipes for public transportation, supplying mines and farming neighborhoods with water, and draining and reclaiming lands, and for floating logs and lumber on streams not navigable."

It is a matter of common knowledge and part of the history of this commonwealth that the agricultural interest is dependent almost wholly, and the mining industry to a great extent, upon the conservation and distribution of the waters of the state. For these reasons this additional power had been given to corporations or individuals engaged in such enterprises, to enable them to obtain the necessary grounds for the construction of reservoirs, canals, etc., required in the distribution of the waters of the state. The constitutional provision requiring all property to be equally and uniformly assessed of necessity would compel the taxation of this privilege or power in the hands of irrigation companies or water associations, based upon its actual value, in the same manner as the right enjoyed by corporations engaged in the business of the plaintiff company.

In my judgment, to hold that it was the intent of the makers of the Constitution to subject the naked right of eminent domain by irrigation companies or water associations to taxation would be to run contrary to the entire history of all previous legislation in the territory of Utah, as well as being inimical to the best interests of the people of the state.

I am therefore clearly of the opinion that it was not the intention of the framers of the Constitution, or of the Constitution itself, that the naked right or power to invoke the right of dominion of private property for a public use should be subject to taxation.

It follows that the judgment of the district court should be affirmed. Such is the order. Respondent to recover costs.

CORFMAN, C. J., and FRICK, WEBER, and THURMAN, JJ., concur.