UNION STEAM PUMP SALES CO. *v.* SECRETARY OF STATE.

1. APPEAL AND ERROR—ISSUES RAISED BY PARTIES CONTROLLING—
   QUESTIONS REVIEWABLE—AMICUS CURIÆ.

   Although general leave was granted to file briefs as
   *amicus curiæ*, in view of the fact that the issues are
   controlled by the parties to the case, the Supreme Court
   will not consider new issues raised in said briefs, but
   will consider only the issues raised by the parties.

2. CORPORATIONS — FRANCHISE FEE — TAXATION — SPECIFIC TAX—
   STATUTES.

   The "annual franchise fee" required by Act No. 85, Pub.
   Acts 1921, to be paid by corporations at the time of filing
   their annual reports with the secretary of State, as re-
   quired by part 5, chap. 2, § 5, Act No. 84, Pub. Acts
   1921, is *held* to be a specific tax.

3. SAME—FRANCHISE "TO BE" AND "TO DO."

   The franchise "to be" a corporation is a right belonging
   to the corporators, while the franchise "to do" is a right
   belonging to the corporation.

4. CONSTITUTIONAL LAW— CORPORATIONS — TAXATION — FRANCHISE
   FEE—PRIMARY SCHOOL FUND.

   Section 1, Art. 10, Const. 1909, providing that "all sub-
   jects of taxation now contributing to the primary
   school interest fund under present laws shall continue
   to contribute to that fund," construed, and *held*, to re-
   tain the then sources of revenue to the primary school
   interest fund, including the specific tax on the franchise
   to be a corporation in this State and all increases in
   such tax, but not to include the tax on the franchise
   to do business as a corporation in this State.

5. SAME—STATUTES—AMENDMENTS.

   In view of the rule that all doubts should be resolved
   in favor of the validity of legislation, even if Act No.
   182, Public Acts 1891, was infirm because the tax raised
   from the franchise to be a corporation was thereby ap-
   propriated to the general fund of the State rather than
   to the primary school interest fund (section 1, Art. 14,

On right to be a corporation as a franchise within constitu-
tional or statutory provisions subjecting franchises to taxation
as property, see note in 28 L. R. A. (N. S.) 255.

Const. 1850), it was not such a nullity as to prevent said infirmity being cured by the amendment of Act No. 46, Pub. Acts 1897.

6. SAME—TAXATION—STATUTES—CONSTRUCTION—VALIDITY:

Although section 8, Act No. 85, Pub. Acts 1921, is in conflict with section 1, Art. 10, Const. 1909, in that it appropriates the tax raised upon the franchise to be a corporation to the general fund of the State rather than to the primary school interest fund, said invalidity does not affect the rest of the act, and the appropriation therein of the annual tax upon the franchise to do business as a corporation within this State to the general fund is a valid exercise of the legislative will.

7. TAXATION—POWERS OF LEGISLATURE TO CLASSIFY—CONSTITUTIONAL LAW.

The legislature has the power to classify for purposes of taxation, and it is the abuse of said power, and not its exercise, that is within the constitutional inhibition.

8. CONSTITUTIONAL LAW—CORPORATIONS— CLASSIFICATION — TAXATION—SPECIFIC TAX.

That Act No. 85, Pub. Acts 1921, provides for a minimum and maximum tax to be paid by corporations for the franchise to do business in this State, based upon the amount of capital stock, does not render it invalid because in conflict with section 4, Art. 10, State Const., providing for uniformity of taxation, or with the 14th Amendment to the Federal Constitution, providing for equality under the laws, although under the classification in said act there is a difference in the percentage of tax on the capital stock paid by the small corporation and the large one.

Mandamus by the Union Steam Pump Sales Company to compel Charles J. De Land, secretary of State, to accept and file an annual report. Submitted October 18, 1921. (Calendar No. 29,934.) Writ denied December 5, 1921.

*B. D. Chandler, Joseph L. Hooper,* and *Burritt Hamilton,* for plaintiff.

*Merlin Wiley,* Attorney General, and *Samuel D.*

*Pepper* and *Clare Retan,* Assistants Attorney General, for defendant.

*Beaumont, Smith & Harris, Boomhower & Beach* and *C. F. Gates, amici curiæ.*

Fellows, J.   Plaintiff is a domestic corporation located at Battle Creek.   It tendered to defendant secretary of State its annual report required by section 5 of chapter 2 of part 5 of Act No. 84, Pub. Acts 1921, accompanied by a filing fee of $2.   It did not tender the "annual franchise fee" provided by Act No. 85, Pub. Acts 1921; defendant, solely on the ground of such failure, declined to accept and file such report.   Plaintiff, contending that Act No. 85 is invalid, applied for mandamus.   We issued an order to show cause, return was made and the case was argued at length.   General leave was granted to file briefs as *amicus curiæ,* and several such briefs have been filed. All of them have been considered, but as some of them seek to raise new issues it may be proper to here state that under our practice the parties to the case have control of the issues and we find it necessary to only consider the issues raised by them.   The constitutional questions thus raised are as follows:

"1. That the act offends section 1 of article 10 of the State Constitution by attempting to divert to the general fund a specific tax which is constitutionally payable into the primary school interest fund and other definite educational funds only.

"2. That the act offends section 4 of article 10 of the State Constitution by attempting to impose a specific tax which is not uniform upon the classes upon which it operates.

"3. That the act offends the 14th Amendment of the Constitution of the United States by denying to persons within the jurisdiction of this State the equal protection of the laws."

In our discussion we shall consider the following questions:

(1) What is the character of the charge laid by the act?

(2) Does the appropriation of the revenue thus raised to the general fund of the State offend section 1 of article 10 of the Constitution?

(3) The question of uniformity under section 4 of article 10 of the State Constitution and of equality under the 14th Amendment to the Federal Constitution.

1. In considering the character of this charge levied upon the franchises of corporations to do business as corporations in this State we must look beyond the shadow to the substance, beyond the mere play of words to the actual accomplishment, beyond the terms employed and phraseology used to the thing done. A tax is a tax by whatever name it may be called. Its misnomer neither adds to nor detracts from its true character. That the legislation is not in the exercise of the police power of regulation must be, and we understand is, admitted. *Vernor* v. *Secretary of State*, 179 Mich. 157 (Ann. Cas. 1915D, 128). That it is the exercise of the highest prerogative of sovereignty, that of levying taxes to meet the expenses of the government, is, we think, clear. That it is not a property tax but is a tax on the franchise to do business as a corporation within the State is likewise clear. That it is the levy of an excise tax may be admitted if we accept the following broad definition of an excise found in 26 R. C. L. page 236:

"An excise is a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege."

That the charge here laid is a specific tax is, we think, settled by the former decisions of this court. In *Kitson* v. *Mayor, etc., of Ann Arbor*, 26 Mich. 325, and *Youngblood* v. *Sexton*, 32 Mich. 406, local specific taxes were involved. In the later case they were levied by the State but for local purposes. In *People*

v. *Walling*, 53 Mich. 264, the power exercised was the police power.   In these cases the taxation was upon the business of selling intoxicating liquor, and it was held not to license what was otherwise prohibited by law.   In *Walcott* v. *People*, 17 Mich. 68, the tax was upon the business of conducting an express company within the State.   It was held to be a specific tax. In *Chambe* v. *Wayne Probate Judge*, 100 Mich. 112, and in *Union Trust Co.* v. *Wayne Probate Judge*, 125 Mich. 487, in which cases the first and second inheritance tax laws were involved, it was held that the inheritance tax, a tax on succession, was a specific tax. In *Union Trust Co.* v. *Detroit Common Council*, 170 Mich. 692, the mortgage tax was held to be a specific tax.   And in *Jasnowski* v. *Board of Assessors*, 191 Mich. 287, the automobile tax was held not to be a tax upon property but a privilege tax, a specific tax. These cases, we think, fix beyond question the character of the charge here laid.   It is a specific tax.

2. The Constitution of 1850 contained the following provision:

"All specific State taxes, except those received from the mining companies of the Upper Peninsula, shall be applied in paying the interest upon the primary school, university, and other educational funds, and the interest and principal of the State debt, in the order herein recited, until the extinguishment of the State debt, other than the amounts due to educational funds, when such specific taxes shall be added to, and constitute a part of the primary school interest fund. *   *   *"   Constitution of 1850, Art. 14, § 1.

The Constitution of 1909 substituted for this provision section 1, article 10, which reads as follows:

"All subjects of taxation now contributing to the primary school interest fund under present laws shall continue to contribute to that fund, and all taxes from such subjects shall be first applied in paying the interest upon the primary school, university and other educational funds in the order herein named, after

which the surplus of such moneys shall be added to and become a part of the primary school interest fund."

These provisions when placed in juxtaposition show a radical change, in language at least, in the fundamental law upon the subject of contributing revenues raised by the State to the primary school fund. The important question in the case, and to our mind the crucial one, is the construction of the following words found in the Constitution of 1909:

"All subjects of taxation now contributing to the primary school interest fund under present laws shall continue to contribute to that fund."  *  *  *

In cases of doubtful construction we may turn to the debates of the Constitutional Convention and to the history of the times. By the amendments to article 14 of the Constitution of 1850, submitted to and adopted by the electors at the fall election of 1900 (Pub. Acts 1901, p. 404) and the enactment of Act No. 173, Pub. Acts 1901, provision was made for a change in the manner of assessing railroad properties. This change greatly augmented the primary school fund. The constitutional provision and statute were attacked as unconstitutional in the United States district court for the western district of this State. On April 16, 1906, the Supreme Court of the United States finally disposed of the cases, sustaining the tax (*Powers* v. *Railway Co.*, 201 U. S. 543 [26 Sup. Ct. 556]). By the report of the auditor general for the year 1907 (page 127) it will appear that every county in the State, save one, received from the State for primary schools in the year 1906 more money than it returned to the State for State taxes. By the report of the auditor general for the year 1908 (page 139) it will likewise appear that every county in the State, save three, received in primary school money in the year 1907 more than it paid the State for State

taxes. These years were doubtless the high tide as they included back taxes and penalties. But the members of the Constitutional Convention, who framed the Constitution, knew, and the people who adopted it knew, that the primary school fund had been greatly increased. The people were no doubt jealous of the primary school fund. It was devoted to a most beneficent purpose; it was collected and turned over by the State without effort on the part of the local officers, and it materially relieved the burden of local taxation. But a dollar paid in taxes is no more nor less than a dollar whether paid for local or State purposes. The State, unless it be permitted to look to other subjects of taxation, must collect its revenues by direct taxes upon the tangible property within its borders. The members of the Constitutional Convention and the people alike were familiar with the primary school fund, both knew of the then recent increase in its amount. (It will be noted that the convention assembled October 22, 1907, and the Constitution was adopted at the November election, 1908.) So likewise both the members of the convention and the people knew that the State government must have revenues to meet its necessities or cease to function. As tersely stated by Mr. Justice McKenna in *Merrick* v. *Halsey & Co.*, 242 U. S. 568 (37 Sup. Ct. 227): "It costs something to be governed."

Turning now to the debates of the Constitutional Convention (pages 767, 768, 769), and to the address to the people (page 1434), it likewise becomes apparent that that body clearly had in mind in making the change that the then sources of revenue applicable to the primary school fund should be retained, but the restrictions do not go beyond that. The great field lying beyond these limits through which the State might search for sources of revenue for its general purposes was left untouched, and the State un-

hampered in its search. Whether we take only the language of the present Constitution and compare it with that of the old, or resort to the history of the times, the debates of the Constitutional Convention and the address to the people, we are justified in the conclusion that the Constitution retained to the primary school fund its then sources of revenue, its then "subjects of taxation," leaving the State a free hand in dealing with every other source of revenue, every other subject of taxation.

What were then the sources of revenue of the primary school fund? What were then the subjects of taxation? It will not answer the question to say "all State specific taxes," except those received from mining companies in the Upper Peninsula, because then the change in language worked no change in results, and in *Jasnowski* v. *Board of Assessors, supra,* we held that it was within the power of the legislature to appropriate the automobile tax, a specific tax, to the highway fund. It will not answer the question to say "corporation taxes," because taxes on corporations are as varied as the fertility of legislative minds can conceive. When the present Constitution took effect corporations of the class here involved were paying general *ad valorem* taxes on the property owned by them in the State, and the State was likewise exacting as a condition precedent to the right, the franchise to be a corporation in this State, a specific tax of one-half mill. The law here under consideration levies a specific tax upon the right, the franchise to do business as a corporation. Are these two franchises one and the same thing? If so, then the subjects of taxation, the sources of revenue, are the same, and the Constitution has made the appropriation beyond the power of the legislature to change. If these two franchises are not one and the same thing, if they differ in character, then the subjects of taxation, the

sources of revenue, are not the same and the legislature is left free to make the appropriation to the general fund.

This question is, we think, settled by authority and to the authorities we shall now address ourselves. Ruling Case Law in its article on Taxation (26 R. C. L. p. 165) says:

"Different Kinds of Corporate Franchise Tax. Taxes upon the franchise of corporations fall into five different classes: (1) organization taxes, or fees exacted of domestic corporations for the grant of corporate powers; (2) excises levied periodically, usually annually, upon the franchise of domestic corporations; (3) excises charged foreign corporations for the privilege of entering and doing business within the State; (4) excises upon special privileges enjoyed by particular corporations; (5) *ad valorem* taxes on franchises as property. These taxes are not necessarily alternative but may be concurrent. Thus a property tax may be imposed on a corporate franchise, and an excise may also be imposed on the right to incorporate in the first instance and annually thereafter as the right to continue corporate existence."

Mr. Justice Matthews, speaking for the court in *Memphis, etc., R. Co.* v. *Railroad Com'rs*, 112 U. S. 609, 619 (5 Sup. Ct. 299), said:

"The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges, vested in and to be exercised by the corporate body as such, are the franchises of the corporation."

In *London & San Francisco Bank* v. *Block*, 117 Fed. 900, a foreign corporation was engaged in the banking business in California. A tax had been levied upon its right to do business. In disposing of the case it was said:

"It is contended on behalf of the complainant that it has not in this State any franchise taxable under the law. This contention is based upon the grounds that

the right to be a corporation is not a franchise of the corporation itself, but belongs to the members composing the corporation. At common law the forming of a corporation was prohibited, but in England a corporation may be formed under a grant of the king or an act of parliament, and in the United States the chartering of corporations belongs to the legislature alone, and the grant is made either by general or special laws. This right to form a corporation is a grant to individuals, and the franchise belongs to them. But this is the franchise to be a corporation, and not the franchise of the corporation to do, which is a separate and distinct franchise, belonging to the corporation, and having in most instances a value."

The distinction was clearly pointed out by the supreme court of Alabama in *Southern R. Co.* v. *Greene*, 160 Ala. 396 (49 South. 404), where it was said:

"It was said in argument that the tax on a corporate franchise is a tax on the right to be a corporation; but that is not correct, for the right to be a corporation is a right or franchise that belongs to the individuals who compose the corporation, and not to the corporation itself. The franchises of the corporation are rights to engage in and carry on the business for which it was chartered."

In *Adams Express Co.* v. *Ohio*, 166 U. S. 185, 224 (17 Sup. Ct. 604), it was said:

"But the franchise to be is only one of the franchises of a corporation. The franchise to do is an independent franchise, or rather a combination of franchises, embracing all things which the corporation is given power to do, and this power to do is as much a thing of value and a part of the intangible property of the corporation as the franchise to be."

In *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305 (12 Sup. Ct. 403), Mr. Justice Field pointed out that the franchise to be a corporation belonged to its members when he said:

"A corporation being the mere creature of the legislature, its rights, privileges and powers are dependent solely upon the terms of its charter. Its creation (except where the corporation is sole) is the investing of two or more persons with the capacity to act as a single individual, with a common name, and the privilege of succession in its members without dissolution, and with a limited individual liability. The right and privilege, or the franchise, as it may be termed, of being a corporation, is of great value *to its members,* and is considered as property separate and distinct from the property which the corporation itself may acquire. According to the law of most States this franchise or privilege of being a corporation is deemed personal property, and is subject to separate taxation. The right of the States to thus tax it has been recognized by this court and the State courts in instances without number."

In Joyce on Franchises, § 38, it is said:

"The franchise of being a corporation belongs to the corporators, while the powers, rights and privileges vested in and to be exercised by the corporate body as such constitute franchises of the corporation."

Both Mr. Fletcher and Mr. Thompson recognize the distinction between the franchise "to be" and the franchise "to do;" and both make it clear that the franchise "to be" a corporation belongs to the corporators, and that the franchise "to do" business as a corporation belongs to the corporation. In section 1150, 2 Fletcher Cyclopedia of Corporations, page 2109, it is said:

"The franchise to exist as a corporation, generally referred to as the corporate or general franchise, belongs to the incorporators rather than the corporation; the special or secondary franchises belong to the corporation."

In 3 Thompson on Corporations (2d Ed.), § 2864, it is said:

"It results from the definition that a franchise is

a privilege granted by the sovereign to a subject, and from the very nature of a corporation, that the primary franchise belongs to the corporators in their individual capacity and not to the corporation itself. The interest of the corporator in the franchise is property of which he cannot be deprived without due process of law."

And in section 2865 it is said:

"On the other hand, the secondary or annexed franchises, by which is meant the privileges, powers and franchises of the corporations necessary to its operation and the properties possessed by it, belong to the corporation as a corporation and not to the individual members or corporators."

See, also, the following cases: *Chehalis Boom Co.* v. *Chehalis County,* 24 Wash. 135 (63 Pac. 1123); *Fietsam* v. *Hay,* 122 Ill. 293 (13 N. E. 501); *Cedar Rapids Water Co.* v. *Cedar Rapids,* 118 Iowa, 234 (91 N. W. 1081); *Blackrock Copper Mining & Milling Co.* v. *Tingey,* 34 Utah, 369 (98 Pac. 180, 28 L. R. A. [N. S.] 255, 131 Am. St. Rep. 850, and note, p. 862); *Bank of California* v. *San Francisco,* 142 Cal. 276 (75 Pac. 832, 64 L. R. A. 918); *State* v. *Medical Society,* 38 Ga. 608.

These authorities demonstrate beyond cavil that there is a distinction and a well recognized one between the franchise to be a corporation and the franchise to do business as a corporation. One is the franchise "to be," the other the franchise "to do." One belongs to the corporators, the other to the corporation. We do not overlook *Coit & Co.* v. *Sutton,* 102 Mich. 324 (25 L. R. A. 819). While the question here before the court was not there considered, and the language there used was general, it is not at variance with our ultimate conclusion. The franchise "to do" (belonging to the corporation) may follow the franchise "to be" (belonging to the corporators). But each is a different franchise as the

authorities above cited demonstrate and the taxation of one is not the taxation of the other, the sources of revenue are not the same, the subjects of taxation are not the same.  In the case of *Detroit Citizens' St. Ry. Co.* v. *Detroit Common Council,* 125 Mich. 673, this court sustained an *ad valorem* tax upon the franchise owned by the plaintiff which belonged to the fourth class of franchises enumerated in Ruling Case Law and to the third class enumerated by Mr. Justice HOOKER "for the purpose of the discussion of the question before us."  While then intimating that the first two classes of franchises were not subject to *ad valorem* taxation, there was no intimation that they might not be taxed specifically, a question not then or now before the court.

One other question remains to be considered under this head.  In the original briefs all counsel proceeded on the theory that Act No. 182, Pub. Acts 1891, as amended, was a valid act.  In the supplemental and reply brief of the attorney general it is suggested that if we accept plaintiff's contention that the tax was a specific tax then the original act of 1891 was invalid under the holding in *Chambe* v. *Wayne Probate Judge, supra,* and could not be made valid by the amendment of 1897 (Act No. 46, Pub. Acts 1897).  This is premised on the fact that the original act appropriated the fees collected to the general fund, and that it was not until the act of 1897 that they were appropriated to the primary school fund.  We do not understand the attorney general to ask us to hold the original act invalid.  It has been the source of considerable revenue.  He makes the argument in reply to that of plaintiff's counsel.  In *Union Trust Co.* v. *Wayne Probate Judge, supra,* some doubt as to the propriety of the holding in the *Chambe Case* that the entire act was invalid was entertained, and *Walcott* v. *People,*

*supra,* was cited and the act then before the court was sustained although a portion of the tax was appropriated to the general fund.   In the *Walcott Case* it was held by this court that the omission to make the appropriation did not invalidate the act, that the Constitution made the appropriation.   In view of what was intimated and held in the *Union Trust Company Case* and what was said in the *Walcott Case,* and in view of the rule that all doubts should be resolved in favor of validity of legislation we are not persuaded that we should hold Act No. 182 of the Public Acts of 1891 such a nullity as to prevent the infirmity being cured by amendment.   In the form it stood when the present Constitution took effect, it was a valid piece of legislation.

From what has been said it follows that by section 1 of article 10 of the Constitution there was preserved to the primary school fund the tax collected upon the franchise to be a corporation in Michigan, sometimes denominated the origination fee, and upon all increases of such tax since January 1, 1909, and that the appropriation of such tax and the increase thereof to the general fund in section 8 of Act No. 85 of the Public Acts of 1921 is in collision with such section of the Constitution.   It likewise follows that the appropriation of the annual tax levied upon the franchise to do business as a corporation within this State is not in collision with this section of the Constitution, but so far as this objection goes was a valid exercise of the legislative will.   The invalidity pointed out does not affect the balance of the act.   *Union Trust Co.* v. *Wayne Probate Judge, supra.*

3. Section 4 of article 10 of the State Constitution reads:

"The legislature may impose specific taxes, which shall be uniform upon the classes upon which they operate."

The 14th Amendment to the Federal Constitution contains the following:

"Nor shall any State   *   *   *   deny to any person within its jurisdiction the equal protection of the laws."

We shall discuss the question of uniformity under the State Constitution and of equality under the 14th Amendment together.   Both involve the question of classification.   The objection here made grows out of the fixing of a maximum and a minimum in the amount of tax to be paid.   It is pointed out in the briefs and upon the argument the difference in percentage paid by the small corporation and the large one.   We might not find difficulty in agreeing that the law was economically unjust, that in policy it is wrong, —but the question of policy belongs to another branch of the government.   The language of the supreme court of Illinois in the case of *People* v. *Czarnecki*, 266 Ill. 372 (107 N. E. 625), is quite in point.   It was there said:

"If the general assembly has created such a prohibition in the legitimate exercise of legislative power the demurrer must be sustained and the writ denied, since the courts have nothing to do with the question whether such an exercise of power is just or unjust, wise or unwise.   The general assembly, chosen by the people at frequent intervals and directly responsive to their will, is the sole judge of such provisions of the law as will advance the interest of the people, and it is the sole guardian of the public interest and welfare.   When it has acted upon a subject upon which it has power to legislate, the courts have neither the power nor disposition to annul or set aside the law if they should conceive it to be contrary to the public interest, and their power in passing upon an act is limited to the question whether it is within the legislative power."

That absolute uniformity, absolute equality in taxation is Utopian has long been recognized.   That the

legislature has the power to classify has also long been recognized. That it is the abuse of such power, not its exercise, that is within the constitutional inhibition, numerous decisions demonstrate. In the case of *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322 (33 Sup. Ct. 833), the Supreme Court of the United States had before it the question of the validity of the Michigan statute taxing telephone properties. Under the statute some telephone companies were exempted and it was insisted that such exemption worked an inequality under the 14th Amendment. The contention of the appellant was thus stated by Mr. Justice McKenna:

"This being the insistence of appellant, that is, that the tax is on property simply, appellant makes the property, dollar for dollar, the only basis of comparison between the taxed companies and the exempt companies, and asserts illegal discrimination. In other words, treating the tax as one on property, and this being the purpose of the statute, 'each dollar's worth should be treated alike;' and it is contended, if each dollar's worth is not treated alike, there is an arbitrary classification and hence an illegal classification, because it has no proper relation to the legislative purpose."

After considering this objection and considering the question of classification and discussing numerous cases, he says:

"Granting the power of classification, we must grant Government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. *Keeney* v. *New York*, 222 U. S. 525, 536 [32 Sup. Ct. 105]. The State is not bound by any rigid equality. This is the rule;— its limitation is that it must not be exercised in 'clear and hostile discriminations between particular persons and classes.' See [*Quong Wing* v. *Kirkendall*] 223 U. S. 59, 62, 63 [32 Sup. Ct. 192]. Thus defined and thus limited, it is a vital principle, giving to the Government freedom to meet its exigencies, not bind-

ing its action by rigid formulas but apportioning its burdens and permitting it to make those 'discriminations which the best interests of society require.'"

In the case of *Clark* v. *City of Titusville*, 184 U. S. 329 (22 Sup. Ct. 382), the court had before it an ordinance of the city of Titusville.   The ordinance was a revenue measure and is treated in the opinion as imposing a license tax.   Both retail and wholesale merchants were divided into ten classes depending on the amount of their annual sales.   The ordinance fixed a maximum and a minimum.   It was assailed as invalid under the 14th Amendment but was sustained by both the State and the Federal Supreme Courts. Plaintiff's counsel insist that the precise question here involved was not there under consideration.   But upon principle they cannot be distinguished.   Our views are fortified in this regard by an examination of the record and briefs in that case in the Supreme Court of the United States.   Examining the brief of counsel for plaintiff in error in that case we find that the difference in percentages between the small dealer and the large one in exceptional cases there pointed out are quite like those here pointed out in exceptional cases. After pointing out that two dealers might own and operate the same sized stores on the same street with the same amount of stock, and one be required to pay a much greater percentage on his sales than the other, it was said by counsel for plaintiff in error in his brief (page 11):

"What is there so different in their condition or circumstances that would justify taking from the poorer one for the needs of the city ten mills on the amount of his annual sales and from the richer one, only one?   If such artificial classification and discriminate taxation may be indulged in by the States, class legislation will run riot."

The court sustained the classification and upheld the

ordinance. This case is very persuasive in the case before us. The court there relied on *Magoun* v. *Savings Bank*, 170 U. S. 283 (18 Sup. Ct. 594), which involved the inheritance tax law of Illinois, in which it was said:

"If there is unsoundness it must be in the classification. The members of each class are treated alike, that is to say, all who inherit $10,000 are treated alike —all who inherit any other sum are treated alike. There is equality therefore within the classes. If there is inequality it must be because the members of a class are arbitrarily made such and burdened as such upon no distinction justifying it. This is claimed. It is said that the tax is not in proportion to the amount but varies with the amounts arbitrarily fixed, and hence that an inheritance of $10,000 or less pays 3 per cent., and that one over $10,000 pays not 3 per cent. on $10,000 and an increased percentage on the excess over $10,000 but an increased percentage on the $10,000 as well as on the excess, and it is said, as we have seen, that in consequence one who is given a legacy of ten thousand and one dollars by the deduction of the tax receives $99.04 less than one who is given a legacy of $10,000. But neither case can be said to be contrary to the rule of equality of the Fourteenth Amendment. That rule does not require, as we have seen, exact equality of taxation. It only requires that the law imposing it shall operate on all alike under the same circumstances. The tax is not on money; it is on the right to inherit; and hence a condition of inheritance, and it may be graded according to the value of that inheritance. The condition is not arbitrary because it is determined by that value; it is not unequal in operation because it does not levy the same percentage on every dollar; does not fail to treat 'all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed.' "

In *Bell's Gap R. Co.* v. *Pennsylvania*, 134 U. S. 232 (10 Sup. Ct. 533), it was said by Mr. Justice Bradley, speaking for the court:

"The provision in the Fourteenth Amendment, that

no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State legislature or the people of the State in framing their constitution."

Authorities upon this question might be multiplied almost indefinitely, but as the case of *Clark* v. *City of Titusville, supra,* is so identical upon principle and so like the instant case upon the facts even as to the percentage of difference between extreme cases, we forego further discussion, and regard the question as settled by that case and the other cited.

Except as herein stated the act in question is not in collision with either the State or the Federal Constitutions for the reasons urged or, so far as we now perceive, for any reason.

The writ will be denied.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.